In the Matter of the Claim of NELLIE HEIDEMANN against AMERICAN DISTRICT TELEGRAPH COMPANY et al., Respondents.

STATE INDUSTRIAL COMMISSION, Appellant.

**Workmen's Compensation Law — award properly granted for death of night watchman accidentally shot by policeman while in performance of his duty.**

A night watchman employed by a corporation engaged in the business of furnishing its subscribers with protection against burglary, whose duty was to patrol the streets in a given section of a city, try the doors, and keep watch and ward until relieved, and who, while engaged in this work was killed by a shot fired by a police officer then in pursuit of burglars, died in the performance of his duty and from a peril arising out of and in the course of his employment and an award for his death is properly granted under the Workmen's Compensation Law.

*Matter of Heidemann* v. *American District Tel. Co.*, 193 App. Div. 402, reversed.

(Argued January 10, 1921; decided March 1, 1921.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered

September 9, 1920, reversing an award of the state industrial commission made under the Workmen's Compensation Law and directing a dismissal of the complaint.

The facts, so far as material, are stated in the opinion.

*Charles D. Newton, Attorney-General (E. C. Aiken* of counsel), and *Bernard L. Shientag* for appellant. The deceased employee was working in the course of his employment. His sphere of employment was the streets of a large city. The time of his employment was the night. Whatever hazards pertained to such time and place were hazards of his employment. (*Thom. v. Sinclair*, 10 B. W. C. C. 221; *Leonbruno v. Champlain Silk Mills*, 229 N. Y. 470; *Redner v. Faber & Sons*, 223 N. Y. 319; *Bett v. Hughes*, 8 B. W. C. C. 362; *Wold v. Chevrolet Motor Co.*, 179 N. W. Rep. 219.) The accident arose out of as well as in the course of employment. (*Redner v. Faber*, 223 N. Y. 379; *Simpson v. Sinclair*, W. C. & Ins. Rep. 164; *Challis v. L. & S. W. Ry. Co.*, 7 W. C. C. 23; *McNeice v. Singer S. M. Co.*, 4 B. W. C. C. 351; *Andrews v. Failsworth Industrial Society*, 6 W. C. C. 11; *Santacroce v. Sag Harbor Brick Works*, 182 App. Div. 412; *Thorn v. Humm*, 8 B. W. C. C. 190; *Bett v. Hughes*, 8 B. W. C. C. 362; *Bird v. Kiep*, 11 B. W. C. C. 133.)

*Barnett Cohen* and *Frank J. O'Neill* for respondents. The accident to the deceased did not arise out of his employment. (*Matter of Deitz v. Ruppert*, 218 N. Y. 148; *Matter of Redner v. Faber & Sons*, 223 N. Y. 379; *Dennis v. White & Co.*, App. Cas., 1917, 479; *Matter of Grieb v. Hammerle*, 222 N. Y. 382; *Kuyvett v. Wilkinson Bros.*, 118 L. T. Rep. 476; *Allcock v. Rogers*, 118 L. T. Rep. 386.)

CARDOZO, J. In September, 1919, Carl V. Heidemann was employed as a night watchman by the American District Telegraph Company, which was engaged in the

business of furnishing its subscribers with protection against burglary. His duty was to patrol the streets in a given section of Brooklyn, try the doors, and keep watch and ward until relieved. About three o'clock in the morning of September 22, 1919, in the course of his regular work, he was accidentally shot by a police officer then in the pursuit of burglars. The first shot was fired in the air; the second hit Heidemann and killed him. An award under the Workmen's Compensation Law, in favor of his widow, was reversed at the Appellate Division on the ground that death, though occurring "in the course of employment," did not arise "out of" employment within the meaning of the statute.

We reach a different conclusion. Heidemann's duties involved exposure to something more than the ordinary perils of the street with its collisions, its pitfalls, and the like (*Matter of Redner* v. *Faber & Son,* 223 N. Y. 379; *Dennis* v. *White & Co.,* 1917, A. C. 479). For him, in a measure not common to the public generally, there was exposure to the perils that come from contact with the criminal and lawless. Other men, if the ill fortune was theirs to be close to an affray, might, indeed, encounter a like fate (*Dennis* v. *White & Co., supra,* at pp. 489, 492; *Thom* v. *Sinclair,* 1917, A. C. 127, 143; *Bird* v. *Keep,* 11 B. W. C. C. 133; *Allcock* v. *Rogers,* 11 id. 149, 153). *His* calling multiplied the chance that he would be near when trouble came, and in multiplying the chance increased exposure to the risk. "He was brought by the conditions of his work 'within the zone of special danger.'" (*Matter of Leonbruno* v. *Champlain Silk Mills,* 229 N. Y. 470, 472.)

We are told that the death was unrelated to the employment because the burglars had not entered a building which the employer was protecting. The incidents of service may not be limited so narrowly. It was not only in repelling attack upon the property of his employer's patrons that Heidemann had to face the

perils of his calling. He faced them at all times while abroad upon his duties. His employment put him upon the street at night, and put him there in search of trouble. If shots were heard, or cries of distress, or the sounds of an affray, others might run to shelter. His duty was to search the cause. The disturbance might have its origin in the homes and stores and offices intrusted to his care. He could not know unless he looked. Crimes of violence flourish under cover of the night and darkness. That was the very reason why Heidemann was there to guard. The sudden brawl, the " chance medley " (Blackstone Comm. book IV, ch. XIV; *People* v. *Tomlins*, 213 N. Y. 240, 244) are dangers of the streets, confronting with steady menace the men who watch while others sleep. Casual and irregular is the risk of the belated traveler, hurrying to his home. Constant, through long hours, was the risk for Heidemann, charged with a duty to seek where others were free to shun. The difference is no less real because a difference of degree. The tourist on his first voyage may go down with the ship if evil winds arise. None the less, in measuring his risk, we do not class him with the sailor for whom the sea becomes a home. The night too has its own hazards, for watchman and for wayfarer.

Death came to Heidemann in the performance of his duty, face to face with a peril to which the summons of that duty called him.

The order of the Appellate Division should be reversed, and the award confirmed, with costs in the Appellate Division and in this court.

HOGAN, POUND, CRANE and ANDREWS, JJ., concur; HISCOCK, Ch. J., and McLAUGHLIN, J., dissent.

Ordered accordingly.