Mercantile-Commercial Bank, Rec., *v.* Koch—83 Ind. App. 707.

52 Hun. 111; *Masterton* v. *Mount Vernon* (1874), 58 N. Y. 391; *Normandin* v. *Kansas City* (1918), 206 S. W. (Mo. App.) 913.

Judgment reversed, with instruction to grant a new trial.

---

MERCANTILE-COMMERCIAL BANK, RECEIVER, ET AL. *v.* KOCH ET AL.

[No. 12,236. Filed December 15, 1925.]

MASTER AND SERVANT.—*Murder of an employee by an outsider held to have arisen in the course of the employment but not out of it.*—The murder of an employee of a corporation by an outsider, while the deceased, a solicitor and collector, was waiting at a barber shop near the plant of the employer, as was his daily custom, to report to the bookkeeper, arose in the course of the employment, but, where the killing was not because of the employment or of anything connected therewith, but because of a personal grievance against the deceased employee, it did not arise out of the employment, within the meaning of the Workmen's Compensation Act (§9462 *et seq.* Burns 1926, §8020a1 Burns 1914).

From Industrial Board of Indiana.

Claim for compensation under the Workmen's Compensation Act by Barbara Koch and others against the Mercantile-Commercial Bank, receiver. From the award made, the receiver and its insurance carrier, the United States Fidelity and Guaranty Company, appeal. *Reversed.* By the court in banc.

*Joseph H. Iglehart,* for appellants.

*Albert W. Funkhouser, Arthur W. Funkhouser* and *Robert D. Markel,* for appellees.

McMAHAN, J.—Appellant bank, as receiver for M. Hoch Coal Company, and the United States Fidelity and Guaranty Company, its insurance carrier, appeal from an award of the Industrial Board awarding appellees compensation as dependents of John A. Koch, who was

an employee of the receiver, and who died as the result of an accident alleged to have arisen out of and in the course of his employment. No question is presented as to the dependency of appellees or as to the amount of compensation. Appellants' contention is that the accident did not arise out of and in the course of the deceased employee's employment.

John A. Koch was murdered by one Frank Hoch who was not and never had been an employee of the receiver. John A. Koch and Margaret Hoch, a sister of Frank Hoch, were the chief owners of the capital stock in the coal company, each owning an equal amount of stock therein. John Koch, Jr., a son of the deceased, and William A. Koch, a cousin of the deceased, each owned one share of the stock. Prior to September 12, 1922, that being the day when the receiver was appointed, there had been discord and want of harmony between the deceased and Margaret Hoch. The trouble between these parties became more acute after the appointment of the receiver, although there were no personal encounters between them, nor were there any threats made by Margaret Hoch. Notwithstanding the ill feeling between the parties, the receiver continued to employ both of them. Miss Hoch was a director, as well as the secretary and treasurer of the company, and after the appointment of the receiver, she was employed in the office, while John A. Koch solicited and took orders for coal, made collections, etc., and reported to the bookkeeper at the close of each day. At the suggestion of the bookkeeper, who was acting as the manager of the coal company for the receiver, John A. Koch usually stayed away from the office until after Miss Hoch left at the end of the day, after which he would make a report to the bookkeeper. While waiting for Miss Hoch to leave the office, Koch usually waited at a cigar store across the street from the office of the coal

company.   On Monday, October 2, 1922, the day before the killing, there had been a meeting of the stockholders of the coal company, at which Miss Hoch had been voted out of office as director and secretary and treasurer of the coal company.   When Miss Hoch went home after this meeting and told her father and her brother Frank about it, they, in the language of Miss Hoch, said, they were "going to get John Koch, but that she had pursuaded them not to do so."   On the Saturday prior to this meeting, Frank Hoch said he would kill John Koch if the latter caused his sister, Margaret, to lose her interest in or her position with the coal company.   On the evening of the murder, Frank Hoch evidently had been drinking and, while intoxicated, with a drawn revolver, went into the cigar store where the deceased had been in the habit of waiting and, seeing him, exclaimed "John Koch" and at once shot and killed the latter.   There is no evidence that the deceased had been in front of the cigar store watching for Miss Hoch to leave the office or that she had left the office at the time of the shooting.   The witnesses who were present in the cigar store at the time of the shooting testified that the deceased came into the back room, took a soft drink, stood there drinking it, and was watching some men play cards when Frank Hoch came and, after calling out the name of the deceased, immediately shot and killed him.

G. H. Thomas, weighmaster in the employ of the receiver, testified, in substance, that he reported each day's business, collections, charges, orders, etc., to Koch. That previous to the appointment of the receiver, he went to the office to make his report.   Later, he would go to the office after Miss Hoch left.   If he got there before she left, he would go across the street to the barber shop, and report to Koch, and after Miss Hoch would leave, they would then go to the office.   About

710    APPELLATE COURT OF INDIANA,

Mercantile-Commercial Bank, Rec., *v.* Koch—83 Ind. App. 707.

twenty minutes before five on the evening of the homicide, Koch called this witness by telephone, telling him he was at the barber shop and for the witness to come there. The witness started for the barber shop about fifteen minutes later, but Koch had been killed before he got there.

Appellants challenge both the sufficiency of the facts found to support the award, and the sufficiency of the evidence to sustain the finding of facts. We think it clearly appears that the death of John Koch occurred in the course of his employment. The only remaining question is: Did his death arise out of the employment? Appellants' main contention is that there is no causal connection between the conditions under which Koch was required to work, or any risk of his employment, and the injury which resulted in his death. They say the deceased was killed because he "was John Koch, and not because he was an employee of the receiver." That if any other person than Koch had been the employee of the receiver, such other person would not have been killed. In support of these contentions appellants insist that when an attack is made upon a man, not because he is engaged in a particular employment or on account of a risk incident to it, but because of a personal grievance against him held by an outsider who makes the attack, such attack and the resulting injury afford no ground for the injured employee, or his dependents in case of death, to recover compensation.

Was John Koch shot and killed because he was an employee of the receiver or by reason of any fact connected with such service, or was he shot because of the personal trouble between him and Miss Hoch? In our opinion, the evidence conclusively shows that, at the time of the shooting, Frank Hoch was seeking to find John Koch for the purpose of inflicting a personal injury upon him, not because of his employment by the

receiver or of anything connected with that employment. The fact that the deceased was in the employ of the receiver had nothing to do with the causes that led to his death. The deceased was not killed because he was employed by the receiver or because of anything he did or might have done in connection with that employment. His death was caused wholly because of the trouble and controversy that had arisen between the stockholders of the corporation over which a receiver had been appointed. The facts that the deceased, at the time of the homicide, was an employee of the receiver and that he was killed in the course of such employment do not render the receiver liable for compensation.

In *Scholtzhauer* v. *C. & L. Lunch Co.* (1922), 233 N. Y. 12, 134 N. E. 701, where a waitress, engaged in her work, was shot and killed by a coemployee because she refused an invitation to go out with him, the murder, while it arose in the course of the employment, was held not to have arisen out of the employment, the court saying: "The murder, however, arose not out of the employment, but because the deceased refused to accept Arthurs' invitations, and his anger by reason thereof."

As was said in *In re Gavros's Case* (1921), 240 Mass. 399, 134 N. E. 269, 21 A. L. R. 755: "Ordinarily assault by third persons cannot be considered as incidental to the employment. But where the assault is one which might be reasonably anticipated because of the general character of the work, or of the particular duties imposed upon the workman, injuries resulting therefrom may be found to arise out of or in the course of the employment."

And in *In re McNicol's Case* (1913), 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A 306, it was held that if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation,

as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment.

This is not a case where the employees got into a dispute over the work being done or to be done, or in any way directly traceable to, and connected with, the employment. The deceased employee here was not killed by a coemployee or by any one connected with the employment. He was killed by an outsider, not because of the employment, or of anything connected with the employment, but in revenge for the acts of the deceased as a stockholder in the coal company. No reasonable inference other than this can be drawn from the evidence, and we hold the award is contrary to law and cannot be sustained.

The award is reversed.