LASEAR, INC. *v.* ANDERSON ET AL.

[No. 15,309. Filed November 24, 1934.]

*Burke G. Slaymaker, Clarence F. Merrell, Theodore L. Locke, James V. Donadio,* and *Robert S. Smith,* for appellant.

*William Robinson,* for appellees.

Wood, J.—This is an appeal from an award of compensation made by the full Industrial Board to appellees as surviving dependents of one Elmer Anderson, alleged to have died as the result of injuries received by him, by reason of an accident arising out of and in the course of his employment by appellant. The appellant presents the usual statutory assignment of error for reversal.

The facts may be summarized as follows. The appellant is a trucking company engaged in hauling general merchandise to and from different points in Indiana and adjoining states. Its headquarters are located in Lebanon, Indiana. Elmer Anderson was in its employ as a driver of one of its trucks. On November 14, 1933, he left Lebanon, Indiana, with a truck loaded with merchandise, to be delivered to a customer of the shipper at Akron, Ohio. The distance between the two points is about 325 miles. Two other drivers with loaded trucks accompanied him. The appellant furnished each of the drivers with one dollar to be used by them for the purpose of obtaining their rest. How they spent the dollar in order to get their rest made no particular difference to appellant, so long as the drivers got their rest. Appellant did not require Anderson to spend the dollar, but, for the purpose of its records, it did require him to make out a report of each trip on what was designated as a "trip card," on which appeared expenditures for gas, hotels, miles traveled, bills of lading, etc., including the disposition made of the dollar. We quote from appellant's resume of the evidence as given by its manager, which it is agreed is correct and, as set out in appellant's brief as follows:

"The equipment is always in the protection of the driver and as far as any particular instructions relative to staying at the truck or anything like that, there was no instruction as to that. There was no time when

he was out on the route that he was, or must stay, near the truck. I think that the driver, having full charge of the equipment, would probably answer that at all times. He would have to use his own judgment as to where the truck would be left and how he would leave it. I would say the equipment included the load because, as the equipment was in his care, evidently the load would be in his care too. The load was in his care from the time he left Lebanon until it was delivered. In what manner he would take care of that was entirely up to the driver. There was no instructions given as to what he should do with his equipment when he was out on the road, only to keep the equipment in the best possible condition he could."

"I did not have any control as to where they should spend their nights. I did not instruct them where to spend their nights so that they could contact me at nights. After they retired for the night I did not give them any instructions as to where to stay so that I could get in touch with them. They were to drive, and where they put up at night or where they went to bed made no particular difference to me as long as they arrived at the destination in good condition, and, as far as making contacts with the different drivers during the night, I have no idea where the different drivers sleep or rest at night."

"There was no way to lock this tarpaulin on the truck—just tied on by ropes. When they were on the road we did not make any allowance for meals, just sleeping. The roads were icy at the time. I gave no directions as to what road he should take to Akron, that was entirely up to the driver. From the time he left Lebanon until he returned, the truck and all the equipment was under the driver's jurisdiction entirely."

On this trip Anderson was driving a G. M. C. truck, consisting of a tractor and semi-trailer. There was no

place in this truck to sleep, when it was loaded with merchandise. The tractor was fitted with a driver's cab, which could be locked. The front and sides of the trailer body were solid, the rear was closed with a tail gate, the top was covered with a tarpaulin which was just tied to the body. On the night in question, the thermometer registered two degrees below zero, the roads were icy. At eleven o'clock that night Anderson and the other two drivers arrived at a tourist camp one mile east of the village of Greenwich, Ohio, where they stopped, rented a cabin, parked their trucks side by side, a distance of not more than seventy-five feet from the cabin rented by them, and retired there for the purpose of sleeping during the night. The cabin was furnished with a small dresser, one chair, one double bed, and a gas heater. This heater was the only means of heating the cabin. Sometime between the hours of eleven o'clock p. m. of November 14, and twelve o'clock noon of November 15, 1933, all three of the men died as the result of either gas poisoning, carbon monoxide poisoning or suffocation. The gas heater was still burning when their bodies were discovered.

The full Industrial Board found as an ultimate fact, that, "Elmer Anderson suffered an injury as the result of an accident arising out of and in the course of his employment."

The award of compensation made by the full Industrial Board, in conformity with the finding of facts, is challenged by the appellant, as being contrary to law, because the evidence is not sufficient to sustain the finding of facts, and they are not sufficient to sustain the award.

While we do not find a decided case where the facts are exactly parallel with the instant case, we do find cases where the facts are quite similar, and in which the opinion of the court furnishes valuable aid. We also

find certain well recognized principles of law, which control in what we think is the proper determination of the respective rights of the parties now before the court.

The full Industrial Board found as an ultimate fact, that the injury suffered by Anderson was the result of an accident arising out of and in the course of his employment by the appellant. If there is any competent evidence to sustain that finding it is binding upon this court. Likewise; it was within the province of the Industrial Board to determine the ultimate facts in the case, and if, in determining them it reached a legitimate conclusion from the evidential facts, this court cannot disturb that conclusion, though it might prefer another conclusion equally legitimate. *Lazarus* v. *Scherer* (1931), 92 Ind. App. 90, 174 N. E. 293. Whether the person injured is an employee under the Workmen's Compensation Act, Acts 1929, p. 537, is a question of law where the facts are undisputed. *Manfield etc., Co.* v. *Manfield* (1932), 95 Ind. App. 70, 182 N. E. 539; *Holycross etc., Inc.* v. *Nye* (1933), 97 Ind. App. 372, 186 N. E. 915. In order that the Workmen's Compensation Act may accomplish the humane purpose for which it was passed by the legislature, it must be liberally construed. *Jeffries* v. *Pitman-Moore* (1925), 83 Ind. App. 159, 147 N. E. 919. "The words 'by accident arising out of' the employment as used in section 2 of the Workmen's Compensation Act (now Acts 1929, p. 537, §40-1202, Burns 1933, §16-377, Baldwin's Ind. St. 1934), should be liberally construed so as to accomplish the humane purpose of the act." *In Re Bollman* (1920), 73 Ind. App. 46, 48, 126 N. E. 639; *Holland etc., Co.* v. *Shraluka* (1917), 64 Ind. App. 545, 116 N. E. 330; *In Re Ayres* (1918), 66 Ind. App. 458, 118 N. E. 386. The question in each case must be determined from a consideration of the facts and circumstances in the particular case under investigation.

Furthermore: "The question whether the accident resulting in injury or death in a given case arises out of the employment does not depend upon the minute details of what the employee was doing at the time, but rather upon the question as to whether the accident was due to a hazard to which the employee would not have been exposed apart from the business in which he was employed." *In Re Bollman, supra,* p. 48. Again, "This court has correctly held that an accident occurs in the course of the employment, within the meaning of the compensation act, when it takes place within the period of the employment, at a place where the employee may reasonably be, and while he is fulfilling the duties of his employment, or is engaged in doing something incidental to it." *Jeffries* v. *Pitman-Moore Co., supra.* p. 161.

Generally, an accident may be said to arise out of the employment, where there is a causal connection between it and the performance of some service of the employment. Causal relation is established when the accident arises out of a risk which a reasonably prudent person might comprehend as incidental to the employment at the time of entering into it, or, when the facts show an incidental connection between the conditions under which employee works and the injury.

"Such acts," this court has said, "as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of the employment, and accidents happening in the performance of such acts are regarded as arising out of and in the course of employment. From foregoing propositions it follows logically that an accident to a workman may arise out of and in the course of his employment, within

the meaning of the statute, even though he be not actually working at the time of the accident." *Holland, etc., Co.* v. *Shraluka, supra,* p. 549.

We are not without precedent for an application of the above rules of law in our own court. In the case of *In Re Bollman,* heretofore cited and quoted from, Bollman was the engineer and driver of a traction engine used in connection with a threshing outfit. He was required to leave his own home and travel from farm to farm with the outfit, to stay nights on the premises where the machinery happened to be, and as a watchman, guard and protect it from fire and trespassers. His employment was not for certain hours of each day with no obligation to his employer for the remaining portion of the twenty-four hours, as is usual in most employments. One night while sleeping in a barn on the premises where the outfit was located Bollman was injured. The full Industrial Board awarded compensation. In sustaining the award this court said, p. 49: "Since he was not only to act as engineer in the operation of the machine, but was to remain over night and act as watchman, it must be presumed that it was not the intention of the parties that Bollman was to remain awake through each night, but rather that he should sleep on the premises where the machine was left, and be ready for such emergency as might arise. It cannot be said that Bollman could not, and did not, render service to his employer while asleep, though it is not stated that he was asleep at the time of the accident, but that he 'had retired in the driveway of the barn for the night.' Under the facts stated, he had, as had long been his custom, placed himself not far from the property, so that the noise made by trespassers might the more easily awaken him should he be asleep, and so that he could the more quickly reach the property should help be needed. The accident which caused

Bollman's death was due to a hazard to which he would not have been exposed apart from his employment. The accident was the result of a risk which was reasonably incidental to the employment. We therefore hold that the death of Bollman was by accident arising out of his employment by Lewellen."

See also, *Hobson* v. *Department etc., of Washington* (1934), 176 Wash. 23, 27 Pac. (2nd) 1091; *Morris* v. *Lambeth Borough .Council* (1905), 8 W. C. C. (Eng.) 1; *Granite Sand Co.* v. *Willoughby* (1919), 70 Ind. App. 112, 123 N. E. 194.

Anderson was not on duty certain hours of each day with no obligation to his employer for the remainder of the hours of the day having worked a designated number of hours. His duty and responsibility to his employer were uninterrupted and continuous from the moment he left the city of Lebanon with the truck and mechandise until he had delivered the load at its destination and returned to the city of Lebanon. "From the time he left Lenanon until he returned, the truck and all the equipment was under the driver's jurisdiction entirely." Because of the nature of the labor which Anderson was called upon to perform as a truck driver, he was necessarily placed upon his own responsibility and was compelled to exercise his own judgment, as how best to serve his employer. For the purpose of making the delivery of merchandise, many miles from Lebanon, he was required to leave his home and remain away whatever number of days and nights might be required to make the trip. During this entire time, he would be confronted with many circumstances and conditions wholly beyond the control of himself or his employer, such as weather, roads, traffic, breakdowns, accidents and other elements entering into travel upon public highways which would make it impossible and impracticable for

the employer to impose certain and positive instructions, regarding routes to be traveled, when or where the night should be spent, when or how the truck should be parked. "The load was in his care from the time he left Lebanon until it was delivered. In what manner he would take care of that was entirely up to the driver. There was no instructions given as to what he should do with his equipment when he was out on the road, only to keep the equipment in the best possible condition he could."

Anderson was not only the driver but the custodian of the truck and the merchandise with which it was loaded. Of course it was necessary and it must have been contemplated, that he should have sleep, for the appellant gave him a dollar with which to defray that expense, but he was not supplied with any money with which to defray the expense of storing the truck and its cargo while he was getting his rest, so it is reasonable to assume from the facts in the case that Anderson could not under the terms of the contract of employment and did not at any time entirely cast aside and relax his responsibility for the truck and merchandise placed in his custody by appellant.

On the other hand, the facts show quite the contrary. When he and the other drivers stopped for the night, they did not abandon the trucks but parked them side by side within a distance not to exceed seventy-five feet from the cabin which they were to occupy, so that in case the trucks were molested, they would be more easily awakened should they be asleep, and could more readily reach and protect the property. The nexus between Anderson and his employers was never terminated. He was on duty performing the duties imposed upon him according to his best judgment just as the terms of his contract contemplated. There is no

evidence in the record that any of the men were asleep at the time of the accident.

The accident causing Anderson's death was due to a hazard to which he would not have been exposed had it not been for his employment, and was the result of a risk which was reasonably incidental to the employment. We, therefore, hold that Anderson's death was the result of an injury arising out of and in the course of his employment.

Award affirmed, with statutory penalty of five per cent.