C. & E. TRUCKING CORPORATION *v.* STAHL, ET AL.

[No. 19,629. Filed March 22, 1962. Rehearing denied April 30, 1962. Transfer denied February 24, 1964, with dissenting opinion reported in 196 N. E. 2d 271.]

*William E. Mills,* of South Bend, and *Ross, McCord, Ice & Miller,* of Indianapolis, for appellant.

*Isadore D. Rosenfeld,* and *Patrick Brennan,* both of South Bend, for appellees.

MYERS, J.—This is an appeal from an award of compensation made by the Industrial Board of Indiana to appellees as surviving dependents of one Donald R. Stahl, alleged to have died as the result of injuries arising out of and in the course of his employment with appellant corporation.

The facts may be summarized as follows: Appellant was a trucking company engaged in hauling freight and merchandise to and from different points in Indiana and adjoining states. Its general offices and headquarters were located in the city of South Bend. Donald R. Stahl and his brother, Richard Stahl, were employed by appellant to drive trucks owned by it. On Monday, February 23, 1959, they had been sent to Detroit, Michigan, in separate trucks. After unloading there, they received orders to go to St. Clair, Michigan, wait until morning and then pick up a load of salt at the Diamond Crystal Salt Company. Each brother was driving what is commonly termed a tractor and semi-trailer.

St. Clair is approximately fifty miles north of Detroit. It is a small town, variously described at the hearing as a "summer resort town," with a population of around 1,500 to 2,000. The brothers left Detroit around 4:00 o'clock p.m., and arrived there within five to ten minutes of each other, and proceeded directly to the Salt Company premises. This was about 6:00 o'clock p.m. They put their trailers in loading docks and unhitched the tractors, arranging to return and load at 7:00 o'clock the next morning. Leaving Richard's tractor parked in the Salt Company lot, they climbed into the other and drove out of the premises.

Neither of them had anything to eat since breakfast and they wanted a hot meal. The reason they had not stopped along the way was due to the fact that the gates of the Salt Company were closed at 6:30 o'clock p.m. After leaving the Salt Company, Donald drove to a small hotel in St. Clair known as the Murphy Hotel. He and Richard registered there, obtaining a room for the night. After freshening up, they went to a tavern located on the first floor of the hotel, which had no kitchen facilities, but served beer and sandwiches. They stayed there the rest of the evening, playing pool on a miniature pool table and watching television. They each had several hamburger sandwiches and four or five bottles of beer. As Richard testified, they were just "killing time." Around midnight, they decided to go out and obtain a hot meal.

They used Donald's tractor for driving purposes. Several restaurants were located in St. Clair, but, according to Richard, they were either not open, did not serve warm meals, or were too fancy for them. They tried to find a particular one, south of St. Clair, on the way to Detroit, but, after making two attempts and not locating it, they finally drove north to Port Huron, a city of about 50,000 population, seven or eight miles north of St. Clair. They stopped at a place in the center of town, known as the Hambone Restaurant, where they obtained meals for themselves. They did not drink anything more of an intoxicating nature.

While there, a policeman came in and requested that their tractor be moved from where they had parked it in front of the restaurant, so that a snowplow could do its work. There had been heavy snow and crews were out plowing the street. Donald moved the tractor into a nearby gas station. Around 3:00 o'clock a.m., they left the restaurant and were returning to St.

Clair, by way of Electric Avenue, when the accident occurred.

Richard testified that they came to a part of the highway which was covered with ice, and Donald, who was driving, hit an ice rut and lost control of the tractor, which, first, slid onto and straddled a snowbank and then ran across the road to smash into a tree. The impact threw Donald halfway through the windshield with such force that it killed him immediately.

The Full Board found that Donald sustained personal injury which caused his death as the result of an accident arising out of and in the couse of his employment. It further found that at the time of the accident, he was operating a motor vehicle upon a public highway in the State of Michigan; that he was not intoxicated; that he was not under the influence of intoxicating liquor; that he was not operating the motor vehicle carelessly or heedlessly in wanton and willful disregard of the rights and safety of others, or without due caution or circumspection and at a speed or in a manner so as to endanger, or be likely to endanger, any person or property. The Board then awarded compensation to appellees.

Appellant's assignment of error is that the award of the Board is contrary to law. It argues that error was committed because the facts conclusively show that Donald's death did not arise out of or in the course of his employment.

It is a well-known maxim of law that if there is any competent evidence to sustain the finding of the Board, it is binding on this court. It is also within the province and the duty of the Board to determine the ultimate facts in the case,

"and if, in determining them it reached a legitimate conclusion from the evidential facts, this

court cannot disturb that conclusion, though it might prefer another conclusion equally legitimate." *Lasear, Inc.* v. *Anderson* (1934), 99 Ind. App. 428, 433, 192 N. E. 762, 764.

This court has attempted to define what is meant by an accident arising out of and in the course of employment.

In *Tom Joyce 7 Up Company* v. *Layman* (1942), 112 Ind. App. 369, 374, 376, 44 N. E. 2d 998, 1000, this court said:

" 'This court has correctly held that an accident occurs in the course of the employment, within the meaning of the compensation act, when it takes place within the period of the employment, at a place where the employee may reasonably be, and while he is fulfilling the duties of his employment, or is engaged in doing something incidental to it.'

. . .

" 'Generally, an accident may be said to arise out of the employment, where there is a causal connection between it and a performance of some service of the employment. Causal relation is established when the accident arises out of a risk which a reasonably prudent person might comprehend as incidental to the employment at the time of entering into it, or, when the facts show an incidental connection between the conditions under which the employee works and the injury.'

"The phrase 'in the course of' points to the place and circumstances under which the accident takes place and the time when it occurs.

. . .

"Before an injury is in the course of the employment, the employee must be fulfilling the duty of the employment or be engaged in doing something incidental to it. . . . "

In *Armstead, Widow, etc.* v. *Sommer et al., etc.* (1956), 126 Ind. App. 273, 276, 131 N. E. 2d 340, 342, the following statement is made:

"The words 'out of', point to the origin and cause of the accident or injury. The words, 'in the course of', to the time, place and circumstances under which the accident or injury takes place. The character of the accident, as conveyed by the words, 'out of', involve the idea that the accident is in some sense due to employment. It must, however, result from a risk reasonably incident to the employment. A risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment, and that an injury arises 'in the course of the employment', if it occurs while the employee is doing what a man so employed may reasonably do within the time in which he is employed and at a place where he may reasonably be during the time. *Bryant, Adm'x.* v. *Fissell* (1913), 84 N. J. Law 72, 86 Atl. 458; *Union Sanitary Mfg. Co.* v. *Davis* (1917), 64 Ind. App. 227, 115 N. E. 676."

We have also said:

"Such acts as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of the employment, and accidents happening in the performance of such acts are regarded as arising out of and in the course of the employment. From the foregoing propositions it follows logically that an accident to a workman may arise out of and in the course of his employment, within the meaning of the statute, even though he be not actually working at the time of the accident." *Holland, etc., Sugar Co.* v. *Shraluka* (1917), 64 Ind. App. 545, 549, 550, 116 N. E. 330, 331.

It is appellant's contention that the two brothers detached themselves from their employment when they

entered the tavern in the Murphy Hotel, played some games of pool and had some beer; that when they departed at midnight for a hot meal, which resulted in their going to the Hambone Restaurant in Port Huron, they were doing so for their own personal convenience and pleasure; that no reasonable truck driver would have acted in such a manner as to be on the highway at 3:30 a.m. when he had to load his truck at 7:00 o'clock the next morning. Thus, appellant claims that they were not engaged in their work, that the accident occurred at a place they were not required to be, at a time they were not required to be there, and that they were not doing an act necessary to their lives, comfort or convenience.

We cannot adopt appellant's reasoning, for it must be remembered that these brothers at this particular time were engaged in employment which took them away from home for a period of overnight. Appellant had directed them to go to St. Clair from Detroit on February 23rd and to load salt on the morning of February 24th. This required them to stay overnight at St. Clair. No accommodations had been made for them, nor were they told how to spend their time while waiting to load. They obeyed orders, and, after parking their semi-trailers in the Salt Company's docks at 6:00 o'clock p.m., they had to "kill time" until morning. It could be reasonably inferred that their employer expected them to while away the time in some fashion while waiting to load. This was implicit in their order to *wait until morning*. It is not unreasonable to anticipate that such truck drivers after arrival would want a hot meal and to refresh themselves with malt beverages before so doing. Certainly, under these circumstances, truck drivers may have a choice of places to eat and select the time when it pleases them to do

so. In situations such as this, "killing time" is as much a part of the job as loading, unloading and driving trucks. Irregularities, variabilities and caprice in the methods by which it is done are immaterial.

Where a truck driver's employment requires him to be away from home, it has been held that he is within the course of his employment from the time he embarks until he returns to his home or place of business.

> "His duty and responsibility to his employer were uninterrupted and continuous from the moment he left the city . . . with the truck and merchandise until he had delivered the load at its destination and returned to the city . . . ." *Lasear, Inc.* v. *Anderson, supra,* at page 436, of 99 Ind. App., at page 765 of 192 N. E.; Small's Workmen's Compensation Law of Indiana, §7.4, p. 161.

The trip which was undertaken by the brothers required a continuity of service, so that the time of the accident was not important. *Business Systems, Inc.* v. *Gilfillen* (1950), 120 Ind. App. 565, 92 N. E. 2d 868. They were within five or six miles of their hotel when it occurred. Richard testified that they could not locate a suitable restaurant in St. Clair. Small has stated in his Workmen's Compensation Law, at page 165, §7.5: "Workmen are not chained to their positions." It was said by this court in *Jeffries* v. *Pitman-Moore Co.* (1925), 83 Ind. App. 159, 161, 147 N. E. 919, 920:

> "This court has correctly held that an accident occurs in the course of the employment, within the meaning of the compensation act, when it takes place within the period of the employment, at a place where the employee may reasonably be, and while he is fulfilling the duties of his employment, or is engaged in doing something incidental to it."

It certainly was not unreasonable for the brothers to go to a large city, only seven or eight miles away, in order to obtain a meal, so the place of the accident was not outside the course of their employment. The fact that they went to get a hot meal did not cause them to lose their status as employees, as such was incidental to their employment. *American Steel Foundries* v. *Czapala* (1942), 112 Ind. App. 212, 44 N. E. 2d 204.

We find that there was sufficient evidence of probative value, together with reasonable inferences deducible therefrom, to support the Board's finding that at the time of the accident Donald was engaged in performing a continuous task for the benefit of appellant, and that upon the return from Port Huron the accident they suffered arose out of and in the course of their employment. The cases cited by appellant in support of its position are cases involving only temporary detachments from duty and do not apply under the circumstances in this case.

Appellant has presented other arguments in support of its position, wherein it charges that Donald's death arose out of his commission of a misdemeanor in violation of a Michigan statute pertaining to reckless driving (Mich. Stat. Anno., Section 9.2326, Sec. 626 [a]), and in violation of an Indiana law prohibiting recovery of compensation in the event injury or death is due to intentionally self-inflicted injury, intoxication, the commission of a felony or misdemeanor, and the willful failure or refusal to perform any statutory duty. Section 40-1208, Burns' Ind. Stat., 1952 Replacement.

What evidence there was concerning a violation of the Michigan statute was conflicting. Richard testified

that Donald was driving properly and within the speed limits at the time of the accident. Several police officers testified that from their investigation at the scene, in their opinion, he must have been traveling at a speed that was dangerous in view of road conditions. This conflict was resolved by the Board which accepted Richard's account. We cannot disturb this finding.

There was no evidence that at the time of the accident Donald was intoxicated or under the influence of intoxicating beverages, nor was there any evidence that he intentionally tried to put an end to himself. We are of the opinion that the Board was correct in refusing to find that Donald was guilty of the willful failure or refusal to perform a statutory duty.

Award affirmed.

Ryan, C. J., and Ax and Cooper, JJ., concur.

NOTE.—Reported in 181 N. E. 2d 21. Transfer denied with dissenting opinion reported 196 N. E. 2d 271.