OLINGER CONSTRUCTION COMPANY,
Appellant (Defendant below),

v.

Carol J. MOSBEY, William Mosbey,
Daniel Mosbey, David Mosbey,
Appellees (Plaintiffs below).

No. 2-581A148.

Court of Appeals of Indiana,
Second District.

Nov. 10, 1981.

Lynn, Wright, Evans & Daly, Evansville, for appellant.

Rodney H. Grove, Grove, Miller & Krohn, Evansville, for appellees.

SHIELDS, Judge.

Appellant Olinger Construction Company (Olinger) appeals the decision of the Industrial Board of Indiana (Board) holding the death of Nathaniel Mosbey arose out of and in the course of Mosbey's employment and awarding compensation to his surviving spouse and dependent children, the appellees.[1]

The events leading to Mosbey's death occurred on the night of August 6, 1975. Mosbey was staying in a motel room in Lawrenceburg, Indiana, about 150 miles from his home in Dale, Indiana. He was at the motel because his employment with Olinger required him to be in Lawrenceburg at the site of bridge and road construction being done by Olinger.

During the evening of August 6, Bernard Bell, a former employee of Olinger who had been fired four days previously, knocked on the door of Mosbey's room. Bell had a textbook on carpentry with him and he asked Mosbey to help him with his studies. Mosbey let Bell into his room, whereupon Bell pulled a concealed knife and stabbed Mosbey repeatedly. Mosbey died in the hospital several days later.

Based on these facts, the Board made the following findings:

"It is further found that decedent's work required him to be at job sites away from his home for days at a time; and, it required him, at the expense, approval and authorization of the defendant, to rent motel rooms at a place of his choice while he was at work and away from home; that on August 6, 1975, the decedent was in one of the said motel rooms when his untimely death occurred.

"It is further found that the defendant was on call twenty-four (24) hours a day to go out to the field to accomplish his job duties and the duties of his employer.

. . . .

"It is further found that decedent died as a result of an injury sustaned [sic] in an accident growing out of his employment with the defendant while acting in the scope and course of his employment.

"It is further found that at the time of his death, decedent left as his sole and only dependents, his widow, Carol J. Mosbey, and his sons, William Mosbey, age 17, Daniel Mosbey, age 14, and David Mosbey, age 12, (all at the time of the

---

1. Nathaniel Mosbey was the husband of appellee Carol Mosbey and the father of appellees William, Daniel, and David Mosbey.

filing of the Form 10 application, May 6, 1977)."

On appeal Olinger raises the issues of whether the Board's findings are contrary to the evidence and whether these findings sustain the Board's conclusion that Mosbey's death arose out of and in the course of his employment.

Our first level of review is to determine if the Board's findings support its conclusion.[2] We find they do.

Olinger attacks the validity of the conclusion that Mosbey's death was the result of an injury incurred while acting in the scope and course of his employment. However, the Board's findings support the contested conclusion.

■ To be eligible for Workmen's Compensation in Indiana an employee, or his dependents, must demonstrate his accident arose "out of and in the course of the employment." IC 22–3–2–2 (Burns Code Ed.) The phrases "out of" the employment and "in the course of" the employment have separate meanings and both requirements must be fulfilled before compensation is awarded.

" 'Out of' portends some probe into causation and the relationship of a particular accident and a particular harm to the employment sought to be charged. The primary inquiry is directed toward the question of whether the accidental injury or death was the outgrowth of the employment, whether it was due to the employment, whether it was work-induced. Generally stated, the rule seems to be that an accident arises out of the employment when there is a causal connection between it and the performance of some service of the employment. A causal connection is established when the accident is shown to have arisen out of a risk which a reasonable person might comprehend as incidental to the employment, or where the evidence shows an incidental connection between conditions under which the employee worked and his resulting injury or death. The phrase, in

the course of, requires, on the other hand, some investigation into the work itself and the breadth of its grasp. The principal emphasis is upon the time and place elements, so that 'in the course of' the employment might be taken to mean 'during' the employment." (footnotes omitted)

*B. Small, Workmen's Compensation Law in Indiana, § 6.1 (1950).*

■ When applied to one category of employee, the traveling employee, these requirements have received particular interpretation. A traveling employee is one whose job requires travel from place to place or to a place away from a permanent residence or the employee's place of business. *McDonald v. State Highway Dept.,* (1972) 127 Ga.App. 171, 192 S.E.2d 919. Due to the nature of a traveling employee's job, the stringency of the "arising out of and in the course of the employment" requirements have been relaxed.

■ Traveling employees are generally regarded as being in continuous employment (i. e., in the course of the employment) as long as they are traveling for their employer. As the Georgia Supreme Court stated in *Thornton v. Hartford Accident & Indemnity Co.,* (1945) 198 Ga. 786, 32 S.E.2d 816:

"A traveling salesman is taken away from his home or headquarters by his employment; and, because of the nature of his work, he usually can not return home each night. He must of necessity eat and sleep in various places in order to further the business of his employer; and the employer recognizes these necessities and usually pays the expenses of his lodging and meals . . .

"While lodging in a hotel or preparing to eat, or while going to or returning from a meal, he is performing an act incident to his employment, unless he steps aside from his employment for personal reasons. Such an employee is in continuous employment, day and night."

2. *Graham v. Review Bd.,* (1979) Ind.App., 386 N.E.2d 699.

Thus, while the requirement that the accident occur "in the course of" the employment usually means the accident must occur within the period of the employment, because of the special requirements of the traveling employee's job, the traveling employee is generally held to be in the course of his employment from the time he begins his journey until he returns to his home or permanent place of business unless he embarks on a purely personal errand.[3] *C & E Trucking v. Stahl*, (1962) 135 Ind.App. 600, 181 N.E.2d 21; *Business Systems v. Gilfillen*, (1950) 120 Ind.App. 565, 92 N.E.2d 868. See also *B. Small, Workmen's Compensation Law in Indiana*, § 7.4 (1976 Supp.).

The second statutory requirement, that the accident arise "out of" the employment, has been variously interpreted by Indiana courts. Some decisions require that to fulfill this requirement the employee must show the accident occurred because of an increased risk created by the employment. *E. I. DuPont DeNemours v. Lilly*, (1948) 226 Ind. 267, 79 N.E.2d 387. This is known as the increased risk theory. This theory requires the employee be exposed to a quantitively greater degree of risk than the general public. Although the danger may be the same danger to which the general public is exposed, the employee may recover if, because of his job, he is exposed to it more frequently or for a longer period of time than the public. *A. Larson, Workmen's Compensation Law*, §§ 6.30, 9.30 (1978).[4]

Other cases have held if the employee is required to be in the place where the injury occurred and he is in such a place to discharge the duties of his employment, the accident arises "out of" the employment.

*Burroughs Adding Machine Co. v. Dehn*, (1942) 110 Ind.App. 483, 39 N.E.2d 499. This interpretation is known as the "positional risk" doctrine and has been adopted by a growing number of courts. See *A. Larson, The Law of Workmen's Compensation*, §§ 6.50, 11.40 (1978). The positional risk theory holds an injury arises out of employment if it would not have occurred if the employee's job had not required him to be in the place where he was injured. *A. Larson, Workmen's Compensation Law*, § 6.50 (1978). Although Indiana courts have not specifically adopted the positional risk theory, the results in several cases indicate they have adopted the theory in traveling employee cases. In *Lasear v. Anderson*, (1934) 99 Ind.App. 428, 192 N.E. 762, Anderson was a truck driver who was ordered to drive a truck from Lebanon, Indiana to Akron, Ohio. The employer gave him one dollar to be used to obtain his "rest." Anderson rented a cabin in a tourist camp for the night and died of carbon monoxide poisoning or suffocation while he slept. In affirming an award of compensation by the Board, the court stated:

" 'The question whether the accident resulting in injury or death in a given case arises out of the employment does not depend upon the minute details of what the employee was doing at the time, but rather upon the question as to whether the accident was due to a hazard to which the employee would not have been exposed apart from the business in which he was employed.' *In re Bollman*, supra."

92 Ind.App. at 434, 192 N.E. at 764–65. The *Lasear* court went on to state an accident arises "out of" the employment if there

---

**3.** Although the cases do not specifically discuss this exception, it appears clear that a traveling employee can depart from the course of his employment by embarking on a personal errand just as any other employee.

**4.** We believe this to be the correct statement of the increased risk theory although, as Professor Small points out, one of the difficulties with the increased risk theory is the difficulty of defining an increased risk. Small states:

"An increased risk might be said by some to be a risk greater than that to which the public generally is subjected. Others might

say it is a risk greater than that to which others in the same locality are subjected. Others might say it is a risk greater than that to which other fellow-employees are subjected. And others might say it is a risk greater than that to which the particular workman is normally exposed. There are precedents in the Indiana cases to support any of these positions; and there are precedents which support none of them."

*B. Small, Workmen's Compensation Law in Indiana*, § 6.2 pp. 50–51 (1976 Supp.)

is an "incidental" relationship between the employment and the injury; and that acts which are necessary to the "life, comfort and convenience" of the employee are incidental to the employment; consequently an accident which occurs during the performance of such an act can be said to arise out of the employment. 92 Ind.App. at 434, 192 N.E. at 765.

In *Business Systems v. Gilfillen*, (1950) 120 Ind.App. 565, 92 N.E.2d 868, Gilfillen was a traveling salesman who called on customers within a radius of 100 miles around his home in South Bend. Gilfillen's employer paid his expenses while he was on the road. While traveling Gilfillen became ill. He checked out of his hotel and told the desk clerk he was going home. Gilfillen was killed in an automobile accident two hours later. This court upheld the Board's award of compensation reasoning that, since Gilfillen was on the road to Sturgis where he had customers to see the next day, the Board might reasonably have inferred Gilfillen was on the road because of his duties as a salesman. The court found "[u]nder such circumstances the accident which caused his death arose out of and in the course of his employment." 120 Ind. App. at 569, 92 N.E.2d at 870.

In *C & E Trucking Corp. v. Stahl*, (1962) 135 Ind.App. 600, 181 N.E.2d 21, Stahl was a truck driver who was ordered to St. Clair, Michigan to pick up a load. Stahl had to wait in St. Clair overnight before picking up his cargo, so he registered in a hotel. Around midnight, after consuming four or five bottles of beer and some hamburgers, Stahl and a friend decided to go out for a hot meal. On the way back to the hotel after the meal, Stahl was killed when he lost control of the truck he was driving. Once again, this court upheld the Board's finding that Stahl's surviving dependents should be awarded compensation.

In *In re Harraden*, (1917) 66 Ind.App. 298, 118 N.E. 142, this court adopted a test which seems to encompass both the "increased risk" and the "positional risk" theories. Harraden was traveling on business for his employer when he slipped and fell on an icy sidewalk. The court first stated:

"Where the employment of the injured person requires him to be at the place where his injury is received, and he is in fact at such place in pursuance of the discharge of the duties of his employment, the risk thereby encountered is held to be incident to such employment, though the injury may have resulted from conditions produced by the weather to which persons generally in that locality were exposed."

66 Ind.App. at 304, 118 N.E. at 143.

The court then went on to say:

"While the conditions produced by the weather may in a sense affect all alike in the particular vicinity, yet the fact remains that a person so employed is much more exposed to such hazards than the public generally because of the duties enjoined upon him by his employment and the place or places to which he must necessarily go in the discharge of such duties."

66 Ind.App. at 304, 118 N.E. at 144.

Whether the rationale is the "positional risk" theory or the belief that the act of traveling exposes an employee to an increased risk of injury, these cases establish the rule in Indiana that an accident which befalls a traveling employee arises out of the employment if the employee is at the place where the accident occurs because of his employment. That is, if he has been sent to a particular place because of his employment or if he is required to be away from his home or his regular place of work because of his job and is engaged in a task incidental to his health, comfort, or convenience, the accident arises out of the employment.

■ Combining the interpretations of the "arising out of and in the course of the employment" requirements, as they have been applied to the traveling employee in Indiana, leads us to the conclusion that (1) a traveling employee is "in the course of" his employment as long as he is away from home for the benefit of the employer and (2) an accident arises "out of" the employ-

ment as long as the employee is at the place the accident occurs because of his employment. We emphasize our conclusion and our resulting holding is limited to traveling employees.

■ We therefore hold the Board's findings that Mosbey's work required him to be away from his home (i. e., Mosbey was a traveling employee) and that the injury resulting in his death occurred in a motel room where he was staying due to his employment support its conclusion Mosbey died from an accident which arose out of and in the course of his employment.

The second level of review requires us to examine the Board's findings to determine if they are supported by the evidence.

The Board found Mosbey's work required him to be away from home (i.e., that he was a traveling employee) and thus to stay in a motel. The Board also found Mosbey was in this motel room when he died.

■ Olinger argues Mosbey was not a traveling employee because his assignment in Lawrenceburg was long-term. We disagree and hold the Board's finding that Mosbey was a traveling employee is supported by the evidence.

First, the evidence does not show Mosbey's assignment was long-term. Donald Murphy, an Olinger employee, testified Mosbey was not assigned on a regular basis to a specific job, but was assigned as the work was required. Murphy also stated in this instance Mosbey was assigned to the job in Lawrenceburg because it was the biggest thing they had going, but Murphy did not state how long Mosbey had been assigned to the job or how long the assignment was likely to last.

In addition, even if Mosbey had been assigned to the site for an extended time, we see no basis for making a distinction between employees, such as salesmen and truck drivers, who travel from city to city and those, such as Mosbey, who travel to one site and remain there until their specific assignment is completed.

The rationale behind the traveling employee rule is that an employee who is re-quired to travel away from home is furthering the business of his employer as he eats, sleeps, and performs other acts necessary to his health and comfort during his travels. *Thornton v. Hartford Accident & Indemnity Co.*, (1945) 198 Ga. 786, 32 S.E.2d 816. This rationale applies equally to an employee who travels to a fixed location and stays there to do his job. This type of traveling employee is also away from home or headquarters because of his job, so that, in a sense, his activities, such as eating and sleeping in a distant location, are done for the benefit of the employer. Other states have recognized the similarity between the two types of traveling employees. In *Wright v. Industrial Commission*, (1975) 62 Ill.2d 65, 338 N.E.2d 379, an employee of a company which manufactured industrial machines was sent out of state to help install the machinery. The employee stayed for five or six months at a time while supervising the installation of the machinery. The employer attempted to argue that an employee who remains at one job location for five or six months becomes, in effect, a resident of that location and should no longer be classified as a traveling employee.

The Illinois Supreme Court held:

"[Employer's] argument is unconvincing. We can find no rational basis to distinguish between the employee who is continuously traveling and one who travels to a distant job location only to return when the work is completed. While it is true that the latter type of employee may become more familiar with the risks inherent in his out-of-town employment because he remains in one locale, the risks are still present. It would be inconsistent to deprive an employee of benefits of workmen's compensation simply because he must travel to a specific location for a period of time to fulfill the terms of his employment and yet grant the benefits to another employee because he continuously travels."

*Wright* at 381. This same conclusion has been reached by courts in other states. *See McDonald v. State Highway Dept.*, (1972)

127 Ga.App. 171, 192 S.E.2d 919 (employee assigned to a site away from home for over a year); *Brown v. Palmer Construction Company*, (1972) Me., 295 A.2d 263.

At some point a line must be drawn between a traveling employee and one who is permanently assigned and thus becomes a resident of a place where he is assigned to work. In a case such as this, however, where the employee's job was away from his home and his employer's offices, where his job location shifted as the employer required, and where the employer paid him on a *per diem* basis to help cover the cost of living away from home, we cannot dispute the Board's prerogative in finding the employee is a traveling employee.

Olinger also argues Mosbey was not "required" to rent a motel room because he could have commuted between Dale and Lawrenceburg every day. It is clear from a review of the evidence that, although Olinger may not have specifically required as a condition of Mosbey's employment that he live close to the job site, Mosbey was nonetheless "required" to live away from home. Since Mosbey's home was 150 miles from the job site and since he often had work to complete after his regular shift was over and was "on call" 24 hours a day,[5] Mosbey could not, as a practical matter, have returned to his home each night. Because Mosbey could not return to his home each night because of the requirements of his job, the Board was correct in finding Mosbey was "required to stay away from home."

The evidence to support the finding that Mosbey was in his motel room when the attack by Bell occurred is undisputed. There is no evidence Mosbey had departed on any personal errand which would lead to his exclusion from coverage.

The evidence supports the Board's findings Mosbey was a traveling employee, that is, was required to stay in a motel because of his job and that he was in the motel

where he was injured to properly discharge his duties, therefore the Board was correct in allowing benefits from Mosbey's death.

Affirmed.

BUCHANAN, C. J., concurs.

SULLIVAN, J., dissents, with opinion.

SULLIVAN, Judge, dissenting.

I respectfully dissent. An employee or his dependents are not eligible for Workmen's Compensation benefits unless his injury or death arose "out of *and* in the course of the employment." I.C. 22–3–2–2 (Burns Code Ed. Supp.1980).

I have no quarrel with the conclusion of the majority that Mosbey's death occurred while he was "in the course of" his employment. I do not agree, however, that it "arose out of" that employment. The causal connection necessary to the latter statutory requisite is that the death must arise "out of a risk which a reasonable person might comprehend as incidental to the employment, or where the evidence shows an incidental connection between the conditions under which the employee worked and his resulting injury or death." Majority opinion at 912. There is certainly no connection incidental or otherwise between Mosbey's condition of work, i. e., lodging in a motel room, and the independent criminal act which resulted in his death; nor do I perceive that death from stab wounds inflicted by a robber is a risk which a reasonable person might comprehend as incidental to Mosbey's employment as a surveyor for a construction project.

As the Court acknowledged in *Burroughs Adding Machine Co. v. Dehn* (1942) 110 Ind.App. 483, 493–494, 39 N.E.2d 499, 503:

"While the courts have struggled arduously to determine whether particular accidents 'arise out of the employment,' and while they have attempted to express general principles or general formulas as a basis of their determination, it is true

---

5. As explained by Mr. Murphy, an Olinger superintendent:

"And it's an unwritten rule that if you're a company man and you're on salary and if you're needed you get called out. It happens all the time."

R. p. 52.

that the decided cases are in irreconcilable conflict."

The majority acknowledges the lack of harmony in Indiana case law, but for its result relies upon those cases involving injuries sustained by traveling employees on the highways or sidewalks. *Business Systems Inc. v. Gilfillen* (1950) 120 Ind.App. 565, 92 N.E.2d 868 involved an automobile accident which occurred while a traveling salesman was returning home. *C & E Trucking Corp. v. Stahl* (1962) 135 Ind.App. 600, 181 N.E.2d 21 also involved a vehicle accident while a truck driver during an overnight wait for cargo, was driving from a restaurant. *In re Harraden* (1917) 66 Ind.App. 298, 118 N.E. 142, involved an employee who while walking to a business appointment slipped on the sidewalk and in *Burroughs Adding Machine Co. v. Dehn, supra*, the injury was sustained while the employee was walking on his way to a business call. Be that as it may, the risk of a stabbing in a motel room at night by a robber is totally dissimilar to the reasonably comprehensible risks undertaken by every employee who is required to travel from one place to another by vehicle or by foot.

Support in this respect may be drawn from the definitive Indiana treatise, Small, *Workmen's Compensation Law in Indiana*, (1950) § 6.8, p. 130 which states:

"Therefore, if the argument and resulting violence come from a source independent of the employment relation, there can be no compensation."

A case quoted in *Burroughs, supra*, and written by then New York Court of Appeals Judge Cardozo dramatizes the unrelated nature of the risk which resulted in Mosbey's death here. In *Heidemann v. American District Telegraph Co.* (1921) 230 N.Y. 305, 130 N.E. 302, a night watchman was accidentally shot and killed during police pursuit of burglars.

The Court said:

"Heidemann's duties involved exposure to something more than the ordinary perils of the street, with its collisions, its pitfalls, and the like. (Citations omitted.) For him, in a measure not common to the public generally, there was exposure to the perils that come from contact with the criminal and lawless. Other men, if the ill fortune was theirs to be close to an affray, might, indeed, encounter a like fate. (Citations omitted.) His calling multiplied the chance that he would be near when trouble came, and in multiplying the chance increased exposure to the risk. 'He was brought by the conditions of his work "within the zone of special danger."' (Citation omitted.)

\* \* \* \* \* \*

The sudden brawl, the 'chance medley' (citations omitted) are dangers of the streets, confronting with steady menace the men who watch while others sleep. Casual and irregular is the risk of the belated traveler, hurrying to his home. Constant, through long hours, was the risk for Heidemann, charged with a duty to seek, where others were free to shun. The difference is no less real, because a difference of degree. The tourist on his first voyage may go down with the ship, if evil winds arise. None the less, in measuring his risk, we do not class him with the sailor for whom the sea becomes a home." 130 N.E. at 303.

But cf. *Katz v. Kadans & Co.* (1922) 232 N.Y. 420, 134 N.E. 330 (chauffeur while delivering cheese stabbed by insane man). In *Golden v. Inland Steel Co.* (2d Dist. 1976) 171 Ind.App. 233, 359 N.E.2d 252 we affirmed a denial of benefits to a claimant injured in the company parking lot by a stranger during an altercation following a traffic incident. We observed:

"Thus Golden did not sustain his injury 'by being specially and peculiarly exposed by the character and nature of his employment to the risk of the danger which befell him.' *Polar Ice & Fuel Co. v. Mulray* (1918), 67 Ind.App. 270, 273, 119 N.E. 149, 150; *Delco-Remy Corp. v. Cotton* (1933), 96 Ind.App. 493, 497, 185 N.E. 341; *Burkhart v. Wells Electronics Corp.* (1966), 139 Ind.App. 658, 215 N.E.2d 879." 359 N.E.2d at 253.

Although Bell may have been a disgruntled former employee of Olinger there is no evidence that he was attempting to visit retribution upon his former employer by doing violence to Mosbey. To the contrary the only evidence is that Bell intended to and did rob Mosbey. More recent than *Golden v. Inland Steel Co.*, however, is *Wayne Adams Buick, Inc. v. Ference* (1st Dist. 1981) Ind.App., 421 N.E.2d 733 in which the First District adopts an extremely broad "actual street-risk" test which is virtually identical with the "positional risk" theory adopted by the majority opinion today.[1]

Even those cases which have permitted compensation for a victim of a robbery involve employees whose employment required them to carry sums of money or other property which would be inviting to someone bent upon theft. Our case is totally different. Mosbey carried no work-related items of value. The sole reason for Bell's choice of Mosbey as a victim was that Bell assumed Mosbey would have some money and had admired a wrist watch worn by Mosbey. Bell did not know for whom Mosbey worked—only that Mosbey had something to do with the overall construction project.

Even the First District under their "actual risk" theory would undoubtedly deny benefits under the facts before us:

"Employer is correct in its assertion that ordinarily an assault by a third person not connected to the employment cannot be considered incidental to the employment. A personal squabble with a third person culminating in an assault is not compensable. *Davies et al. v. Robinson*, (1932) 94 Ind.App. 104, 179 N.E. 797; *Merchantile-Commercial Bank Receiver et al. v. Koch et al.*, (1925) 83 Ind.App. 707, 150 N.E. 25; *Lincoln, supra.* However, where the assault is one which might be reasonably anticipated because of the general character of the work, or the particular duties imposed upon the workman, such as a baking route salesman who carried money and was shot and robbed, or a night watchman killed by intruders, such injuries and death may be found to arise out of the employment. *National-Helfrich Potteries Co. v. Collar*, (1939) 107 Ind.App. 225, 23 N.E.2d 620; *Hunt et al. v. Gutzwiller Baking Co.*, (1937) 104 Ind.App. 209, 9 N.E.2d 129. Under this doctrine it can be logically asserted that a bookkeeper on the street with company mail could be a target for hoodlums who may believe the mail might contain valuables." 421 N.E.2d at 736–37.

In the final analysis, however, even if some Indiana cases have adopted a "positional risk" concept, e. g., *Wayne Adams Buick, Inc., supra*; *Lasear, Inc. v. Anderson* (1934) 99 Ind.App. 428, 192 N.E. 762, and even though the majority would limit the doctrine's application to travelling employees, I would reject them and today's decision as contrary to the clear statutory requirement that the injury or death not only arise in the course of employment but also out of that employment.

I am unable to accept the premise that the legislature intended such limitless application to the workman's compensation law, particularly in light of the fact that the statute still requires that the injury or death arise both out of and in the course of employment. The majority holding today strikes "out of" from the statute. As stated by the dissenting Justice in *C.A. Dunham, supra* :

"The majority opinion has effectively eliminated the 'arising-out-of' requirement, and has put the employer into the insurance business, at least to the extent of working hours. This was not the intent of the statute. (Citation omitted.) We have not yet converted the act of employing another into an absolute guar-

---

1. *Compare* 1 Larson, *Workmen's Compensation Law* (1978), § 9.50 *with id.* §§ 10 *et seq.* The positional risk concept merely extends application of the actual street risk doctrine to locations other than streets and sidewalks.

*See*, e. g., *C.A. Dunham Co. v. Industrial Commission* (1959) 16 Ill.2d 102, 156 N.E.2d 560 in which an employee killed by a bomb placed on an airliner was held entitled to Workmen's Compensation benefits.

anty of his safety from any and all the vicissitudes of life." 156 N.E.2d at 929–930.