MILHOLLAND SALES AND ENGINEERING COMPANY
*v*. GRIFFITHS.

[No. 14,392.   Filed November 25, 1931.   Rehearing denied
February 4, 1932.]

*Ralph B. Gregg,* for appellant.

*James D. Ermston* and *William E. Jeffrey,* for appellee.

BRIDWELL, C. J.—Appellee, the widow of Ferns E. Griffiths, filed her application for compensation against the appellant, Milholland Sales and Engineering Company, before the Industrial Board of Indiana, under "The Indiana Workmen's Compensation Act of 1929" (Acts 1929, ch. 172, p. 536), alleging, among other things, that said Ferns E. Griffiths died as a proximate result of personal injuries received by him on March 18, 1930, by reason of an accident arising out of and in the course of his employment by said appellant.

The application was heard by a member of the board, who made a finding and award of compensation to appellee; there was an application for review by the full board, and, upon hearing, the full board made a finding

of facts and entered an award in favor of appellee, from which this appeal is taken. The appellant assigns as error that the award is contrary to law.

The sufficiency of the evidence to sustain the finding of facts upon which the award is based is the only question presented.

It is appellant's contention that the death of appellee's deceased husband was due to a disease (status epilepticus) and that the injury received by the decedent did not in any manner contribute to or hasten his death; that no causal connection existed or is shown by any evidence; that there is no competent evidence that the injury suffered by the deceased was a contributing factor to his death, nor any evidence from which such an inference can be drawn.

The undisputed evidence establishes the following facts: On June 18, 1930, and for some time prior thereto, Ferns E. Griffiths was in the employ of appellant as a machinist; on this day, while discharging the duties of his employment, he was injured by an accident caused by a mandrel rolling from a bench in the place where he was working and striking him on his left foot, causing a contused wound of the great toe with a fracture of the distal phalanx of the end bone; the accident happened about the middle of the forenoon and first aid was administered by a fellow workman at the factory; he was then taken to the doctor, who looked after injured employees for the appellant, where the toe was dressed, and he drove home alone, reaching there shortly after noon; that evening he accompanied his wife to church; he returned to the doctor's office for treatment two or three times after June 18, and, on Saturday, June 21, when the previous dressing was removed by the doctor, it was found that the toe nail was loose from the matrix and was only attached by the cuticle; it was removed without the loss of any blood and the toe was

again dressed; immediately following the dressing of the toe, the deceased had a convulsion; he "came out" of this convulsion for a short time, but immediately had another one, and had six or eight convulsions while at the office within an hour's time; between convulsions, he was conscious, and, upon inquiry, informed the doctor his wife was down town, told him where the car was parked, and the doctor sent for the wife (appellee herein) who came to the office; after a conference between the doctor and appellee, the deceased was sent to the hospital, where he continued to have convulsions at intervals for a period of eight days, the convulsions being of epileptic form; he died on June 29, 11 days after his injury; a *post mortem* examination was held.

Appellee's theory is that the wound became infected and blood poisoning ensued as a result of the injury, and she asserts that the evidence is such that the Industrial Board was justified in its finding and award, and could reasonably draw the inference that the injury hastened death, and that it cannot be said, as a matter of law, that the finding was arrived at by mere conjecture or guess.

Appellee testified in her own behalf that, during the six years she had known the deceased, he had never been sick, except that he was troubled some with constipation; that he had never shown any indication of epilepsy or had an epileptic fit; that his great toe, after the injury, was angry looking and bluish; that this discoloration extended to the leg, but that she didn't see the leg only when it was dressed in the hospital; that there was some swelling but it seemed to subside; that there was a discoloration of the leg and groin. Other witnesses, who had known the deceased for periods of time ranging from a year and a half to five or six years, testified that he had the appearance of a strong, healthy man,

that he was a steady worker, and had lost no time from disability or sickness.

Two of the witnesses called by appellee were practicing physicians; neither had ever treated the deceased. One testified to an acquaintanceship of approximately five years and that he had seen and talked with the deceased two or three times a week during that period of time; that he had never heard of his being troubled with any latent disease, and that he was a strong, active, healthy man, so far as he knew and had observed. The other had known deceased about six months, had seen him five or six times, the last time being at the hospital on the night before he died, at a time when he was unconscious. This witness testified that at the other times when he had seen the decedent, he seemed to be all right and an active, healthy man. Later, this witness was recalled by appellee and asked the following question: "When you saw the body of Mr. Ferns Griffiths, did you observe that particular portion of the body that had been injured by this accident, the left toe?" His answer was "yes." Upon further inquiry by appellee's counsel, he stated that the injury had fully healed.

Appellee also called as a witness the undertaker who had charge of the funeral services. This witness testified that he had known the deceased for four or five years and that he seemed a normal man for his age and weight; that, following the accident, he did not see him until after his death; that he did not do the embalming of the body but had it done; that he helped dress the body; that "the left leg was inclined to be swollen but not to any great extent, but it was swollen some"; that he didn't make a careful examination of the toe, just a general observation; that it "showed signs of inflammation, a little streaked but not as deep a streak as I have seen, but it was streaked some"; that he had been a funeral director for 20 years and had had a

thousand cases. The following question was then asked the witness: "I will ask you if it is possible for a man that has vast experience in the preparation of bodies to be able to ascertain by the senses or otherwise whether they were afflicted with blood poisoning at the time of his death?" Over the objection of appellant, the witness was permitted to answer, and answered as follows: "The only way I can answer that question would be by comparison having handled cases of blood poisoning by which I can compare it. In cases of blood poisoning, there does seem to become a gaseous condition, perhaps. I didn't observe this so strongly until the day of the services. In entering the day of the services, I was surprised at the odor I found in the room. I didn't inquire whether or not the room had been closed but I said to get the room ventilation at once. I would say comparatively speaking that was typical of odors I had encountered before in cases of blood poisoning." On cross-examination, the witness was asked, "What is blood poisoning?" and answered, "I am not a doctor. I can't answer that question."

Appellant complains of the overruling of its objection to the question propounded to this witness by appellee, and of the overruling of its subsequent motion to strike certain evidence from the record. Both the objection and the motion is general in character and indefinite. We deem it unnecessary to discuss this question, further than to say that the strict rules of law as to the admissibility of evidence are not binding on the Industrial Board, it being an administrative body.

Four physicians were called by appellant as its witnesses. These witnesses included the physician who dressed the toe of the deceased on the day of the injury and removed the toe nail on the twenty-first, prior to the time he had the first convulsion and was sent to

the hospital; the two physicians who treated him at the hospital and who afterwards attended at the autopsy, and one other who testified as an expert only. The qualifications of each of these witnesses were admitted by appellee.

The doctor who first attended him testified there was no infection of the toe at any time when he saw him and that he was not suffering from blood poisoning on the twenty-first, the last time he dressed the toe; that the convulsions deceased had at his office were epileptic form of convulsions. Each of the physicians who treated him at the hospital and took part in the *post mortem* examination testified there was no infection or blood poisoning; that, while at the hospital, deceased was suffering from *status epilepticus* and that this disease caused his death; that the injury to his toe did not precipitate the condition which resulted in death; that such injury did not, in their opinion, cause death sooner than it would have occurred had there been no injury. The testimony of the expert supported the other medical testimony given in the cause.

In determining the question presented, we have in mind that well-established rule that this court will not weigh the evidence where there is any competent evidence to sustain the finding and award, and that, where facts proved are such that reasonable men might draw an inference therefrom that would sustain the finding made, then such award will not be disturbed on appeal.

We must also remember that the law puts the burden on the applicant of establishing each fact necessary to a legal award of compensation, and that the proof by which such burden is discharged must be based on something more than mere guess, conjecture, surmise or possibility. *Swing* v. *Kokomo Steel, etc., Co.* (1919), 75 Ind. App. 124, 125 N. E. 471; *Pio-*

*neer Coal Co.* v. *Hardesty* (1921), 77 Ind. App. 205, 133 N. E. 398.

In this case, there is no conflict in the evidence as to the cause of death; the testimony of the physicians is in no way controverted; no witness testified that the wound became affected by blood poisoning or that the injury in any way accelerated the disease, or in any manner contributed to the condition that produced death. No causal connection is shown by the evidence, and there is apparent truthful testimony, positive in character, that disproves the contention of appellee in this case.

Where death is due to disease, the fact that the disease became apparent contemporaneously with or immediately following the injury is not sufficient to warrant an award of compensation unless a causal connection is established. *In re Bowers* (1917), 65 Ind. App. 128, 116 N. E. 842.

It is true that the Industrial Board, in determining what has been established by the evidence, may consider not only the facts directly proved, but also all reasonable inferences that may be properly drawn therefrom. This rule, however, cannot be applied arbitrarily, but judgment must be exercised in so doing in accordance with correct and common modes of reasoning. After stating this principle, this court in the case of *Russell* v. *Scharfe* (1921), 76 Ind. App. 191, 130 N. E. 437, said: "An inference should not be drawn where sufficient facts are wanting, or from facts proved, which are inconsistent with, or repelled by, other facts equally well established. An inference cannot be said to be reasonable, which can only be drawn by a capricious disregard of apparent truthful testimony, that is in itself probable, and is not at variance with other proved or admitted facts." See, also, *Pioneer Coal Co.* v. *Hardesty, supra.*

Upon searching the record, we fail to find any evidence showing a causal connection between the  injury received by the decedent and his subsequent death.

The award is reversed.