NICHOLS ET AL. *v.* WINSLOW COAL CORPORATION.

[No. 16,274. Filed January 16, 1939. Rehearing denied February 28, 1939.]

*Carl M. Gray,* for appellants.

*Hays & Hays, Alonzo C. Owens, John S. Taylor,* and *J. Olias Vanier,* for appellee.

CURTIS, C. J.—The appellant, Janie Nichols, is the widow of Olus Nichols and the other two appellants are his dependent children. They filed a claim before the Industrial Board for compensation for the alleged accidental death of the said Olus Nichols while he was employed as a night watchman for the appellee. The death was alleged to have been caused by an accident arising out of and in the course of said employment. The application for compensation was answered in three paragraphs, the first being a general denial and the second alleging in substance that the death of the employee Olus Nichols, October 19, 1937, was not the proximate result of an injury from an accident arising out of and in the course of his employment with the defendant October 19, 1937, but was due to said employee's intentionally self-inflicted injury, in this, to wit: That upon the premises of the defendant on October 19, 1937, said Olus Nichols committed suicide by then and there shooting himself with a revolver. The third paragraph alleges among other things that the death of the employee Olus Nichols October 19, 1937, was not the proximate result of an injury from an accident arising out of and in the course of his employment with the defendant October 19, 1937, but was due to an independent intervening agency, to wit, suicide through voluntary, willful choice by shooting himself with a revolver.

The appellants filed a reply in general denial to appellee's second and third paragraphs of answer.

Upon the issues thus made, the matter was heard by a single member of the board resulting in a finding and order against the appellants. Upon an application for a review before the full board the matter was there heard resulting also in a finding and order against the appellants. An appeal to this court followed. The appellants have assigned here that the award of the full board is contrary to law. This assignment presents all questions sought to have reviewed.

We quote a part of the finding and order of the full board as follows:

"And the Full Industrial Board, having heard the argument of counsel, having reviewed the evidence and being fully advised therein, now finds that on October 19, 1937, one Olus Nichols was in the employ of the defendant at an average weekly wage of $23.07; that on October 19, 1937, the said Olus Nichols died; that at the time of his death the said Olus Nichols was living with Janie Nichols, his wife, Olus Nichols, Jr., a son, and Helen Nichols, a daughter, all of whom were wholly dependent upon the said Olus Nichols for support.

"And the Full Industrial Board, by a majority of its members, now finds for the defendant and against the plaintiffs on the other material allegations of plaintiffs' complaint.

### ORDER

"It is therefore considered and ordered by the Full Industrial Board of Indiana, by a majority of its members, that plaintiffs shall take nothing by their complaint herein, and that they shall pay the cost of this proceeding."

The facts surrounding the death of the decedent are not much in dispute and may be summarized as follows: He was an employee of the appellee and had been employed for a period of approximately two years as night watchman at appellee's coal mine. In addition to his

ordinary duties as night watchman he was required to operate the pumps which were used to pump the water from the pits of appellee's mine when necessary. In the course of his employment as a night watchman he carried a revolver. Sometimes he carried the revolver in a holster with the holster attached to his belt and at other times the holster was in the front of his trousers slightly to the right of the midline of his abdomen. He also used a Ford two-door sedan automobile in going to the mine to work and in going from one of appellee's pits at the mine to the other. When he used the automobile at times he carried the revolver in the back seat or elsewhere in the car.

When the revolver was carried in the back seat he usually got out of the car and reached into the back seat and obtained the revolver and placed it in the holster.

At the time of his death he was a strong able-bodied man, 43 years of age, weighing approximately 195 pounds, almost six feet in height. He was married, had a son, Olus Junior, and a daughter, Helen. He appeared to live happily with his family and wife and to have had no financial or other worries.

A short time before his death he was seen by his neighbors and friends. They stated he appeared to be contented, happy and jovial. A member of his family testified he was happy, contented and jovial at the time he left his home to go to work.

He was last seen alive, so far as the record in this case discloses, by Leo Williams, who operates a confectionery in the town of Winslow, a short distance from the mine, between 12 and 1 o'clock on the night or morning before his body was discovered at the mine. At this time he ate his lunch in the ordinary manner and nothing unusual about his condition was observed by Mr. Williams.

Five or six hours after this conversation his body was found with one foot on the running board of his car and the other foot under the running board. His body lay

prone on the coal, his head was pointed in an easterly direction from the car. His cap was lying on the coal a short distance from his head. The revolver with one shell exploded was lying eighteen inches or two feet from his head and on his left. There was a dent in the coal and there was coal dirt or dust either on the hammer of the revolver or on the handle under the hammer near where the revolver was found. His hands were lying across his breast. There was a bullet hole in the region of his heart, and when a probe was inserted in this hole it showed the bullet had entered the body on an angle of 50 degrees and ranged upward. There were powder burns on the sweater near the bullet hole.

The car had been driven as near to the pump located in the pit as it was possible to drive the car. There was evidence that at a previous time gasoline had been stolen from the tanks at the tipple and prowlers had been on the appellee's property frequently.

The appellee filed with the Industrial Board form number twenty-four (24). It was executed by Kenneth Youngs, the secretary and superintendent of the appellee's company. This report contains the statement, among other things, that the death was accidental due to accidental shooting. No evidence was introduced showing any motive or reason for suicide, and no evidence was offered showing that the decedent had threatened or made any statement whatever in reference to taking his life.

An expert witness on guns of the character of the one found near the deceased testified that the trigger pull of this revolver, when cocked in an attitude of being fired single action was between five or five and a half pounds. He testified it was possible for the deceased to have shot himself and demonstrated several different methods, in which the gun could have been held to have shot himself. This same witness also testified that one

acquainted with the use of firearms when alarmed or
when the person thought it necessary to use the firearm
to shoot accurately ordinarily cocked the gun, and put
it in this attitude, which is commonly called single action,
and if the thumb slipped off the hammer of the gun when
it was being cocked and before it was fully cocked the
gun would be accidentally discharged. He also testified
that if a person slipped when the gun was cocked it might
be discharged. He also testified that if one's arm was
struck or jerked when the gun was cocked that it might
be discharged. He also testified that a person could acci-
dentally shoot himself with this gun.

At the outset, it is to be noted that the full board
failed to make any finding on the second and third para-
graphs of the appellee's answer which alleged
suicide of the decedent. The appellant correctly
argues that the failure of the board to find for
the appellee on this issue tendered by the appellee is
equivalent to a finding on said issues for the appellant.
See *Livers* v. *The Graham Glass Company* (1932), 95
Ind. App. 358, 178 N. E. 359.

But if it be agreed that the failure of the board to find
for the appellee on the issue of suicide presented by its
said second and third paragraphs of answer,
amounts in law to a finding against it upon said
issue yet under the general denial filed by the ap-
pellee, it still remained the burden of the appellant to
establish that the death of the said decedent was by an
accident arising out of and in the course of his employ-
ment by the appellee. The full board reviewed the evi-
dence and found the fact of the employment of the dece-
dent by the appellee on the date of his death, the average
weekly wage, the date of the death of said employee, the
fact of the total dependency of the appellants upon the
decedent for support and then found "for the defendant
against the plaintiffs on the other material allegations of

plaintiffs' complaint." The other material allegations of the appellants' claim referred to by the board were that the death of the decedent was due to an accident arising out of and in the course of the employment of the decedent by the appellee. With the finding against the appellant upon these material allegations, the award must stand unless it may be said by this court that the evidence is so conclusively against the finding of the board as to force a conclusion contrary to that of the board.

In the somewhat similar case of *Alexandria Metal Products Co.* v. *Newsome* (1933), 97 Ind. App. 420, 185 N. E. 520, where a night watchman was found in his employer's office dying from a bullet wound, it was held that the mere fact that the shot was fired and the wound inflicted, without any supporting evidence as to who fired it or why, was insufficient upon which to find an accident arising out of the employment. The award in that case was accordingly reversed. The court said (p. 422) that, "In determining the question presented we must bear in mind that the burden of establishing each fact necessary to a legal award of compensation rests upon the person, or persons, seeking such compensation, and such burden must be discharged by proof of facts, and the finding of facts must be based on something more than mere guess, conjecture, surmise or possibility. *Milholland Sales, etc., Co.* v. *Griffiths* (1932), 94 Ind. App. 62, 178 N. E. 458; *Pioneer Coal Co.* v. *Hardesty* (1921), 77 Ind. App. 205, 133 N. E. 390; *Swing* v. *Kokomo Steel, etc., Co.* (1921), 75 Ind. App. 124, 125 N. E. 471."

The appellants also contend that since the evidence showed that the appellee in its report of the accident to the Industrial Board on form 24 of the board, ▮▮ stated that the accident was an accidental death due to accidental shooting, was conclusively bound thereby as an admission as to the cause and man-

ner of the death. In this the appellants are in error. The Industrial Board no doubt considered that evidence along with all of the other evidence bearing upon that matter in making its determination of the question as to whether or not the death of the decedent was the result of an accident arising out of and in the course of the decedent's employment by the appellee. This it had a right to do. These reports are required to be made promptly by the employer after an accident and it is not intended that such reports shall take away from the Industrial Board the right to determine from all of the evidence the ultimate fact as to whether or not the accident arose out of and in the course of the employment. See: *Black* v. *Oval & Koster* (1936), 101 Ind. App. 452, 197 N. E. 685; *Muncie, etc., Co.* v. *Thompson* (1919), 70 Ind. App. 157, 123 N. E. 196; *Swing* v. *Kokomo, etc., Co., supra.*

Lastly the appellants argue that the board ■ erred in permitting a witness for the appellee over the objection of the appellants to answer the following question:

"What is your opinion whether by the use of this particular gun, Plaintiffs' Exhibit A, the man himself could by his own hand or hands have held this particular gun in such position that he himself could have fired it into his body at the point of entrance, being on a midline between the two nipples in his chest, three and a half inches to the right of his left nipple, and the bullet could have ranged upward and into the point near the junction of the humerus and shoulder joint, with the bullet ranging from there to the right and downward, coming out at a point about three inches below and to the left of the right scapula and a bit to the right of the spine?"

The question was answered as follows:

"Yes, I believe it would."

It becomes apparent, however, that the ruling permitting the question to be answered (even if it be con-

ceded to be an erroneous ruling—a matter we need not decide) was not harmful to the appellants for the very apparent reason that the board, as heretofore pointed out, held with the appellants on the question of suicide.

We have studied the evidence carefully and conclude that we cannot say as a matter of law that the death of the decedent was due to an accident arising out of and in the course of his employment by the appellee.

Finding no reversible error, the award is affirmed.