William LOVELY, Plaintiff-Appellant,

v.

COOPER INDUSTRIAL PRODUCTS, INC., Defendant-Appellee.

No. 2–381A84.

Court of Appeals of Indiana, First District.

Dec. 22, 1981.

Rehearing Denied Jan. 28, 1982.

Joe A. Rowe, Finley, Finley, Rowe, Laur & Spindler, Kendallville, for plaintiff-appellant.

Grant Van Horne, Van Horne & Turner, Auburn, for defendant-appellee.

NEAL, Presiding Judge.

STATEMENT OF THE CASE

This is an appeal by plaintiff-appellant William Lovely (Lovely) from a negative award by the Full Industrial Board (Board) denying compensation to Lovely for alleged injuries to his back which he claimed were received during the course of his employment at Cooper Industrial Products, Inc. (Cooper). Lovely contends that the Board's findings are not supported by the evidence.

We affirm.

## STATEMENT OF THE FACTS

On September 28, 1979, Lovely, age 54, had to leave work due to severe back pains. He had worked at Cooper for eleven years as an operator of two machines which had a related function, a wheelabrator and a degreaser. The function of the machines was to clean dirt and rust from parts. Parts, with an aggregate weight of several hundred pounds, were brought to the machines in bulk by a large magnet which carried them along an uneven track. The work sometimes involved heavy pulling and jerking by Lovely. Also involved was lifting a heavy door, as well as shoveling parts off the floor with a scoop shovel. Testimony was that the work was moderately heavy, requiring arm and back strength and exertion, and Lovely testified it was very hard on his back. Three to four production cycles per hour were run during his eight hour day. Lovely testified that he did not remember a particular incident, or a particular time, or blow that coincided with the onset of the pain. He testified that he was stiff on September 25, sore on the 26th and 27th, and on September 28, he had to leave work because of severe pain in his back about the belt line. On the night of September 28, the pain became worse, and throughout the weekend, progressed to the point that he was unable to go to work on the Monday following. Instead, he visited Dr. Stallman. He was not hospitalized, but was prescribed pain pills. Lovely had some history of a sore back going back to 1973 when he missed two weeks of work from what was diagnosed as a sprained back, with attendant arthritis. Lovely was of the opinion that the heavy work had a lot to do with his back trouble.

Unable to return to work, Lovely applied for and received 26 weeks of sick benefits before a group insurance policy provided by his employer. The application, which was signed by Lovely, stated that his condition was not job related. At the hearing before the hearing member of the Industrial Board he insisted that he had never made such a statement. He further said that no one read him the application, and he could not have read it without his glasses.

The only medical evidence introduced at the hearing was the testimony of Dr. Carl F. Stallman. After relating Lovely's history, similar to the above facts, Dr. Stallman described Lovely as limping, and as having difficulty sitting in a chair and getting up. Lovely could scarcely bend over 45 degrees without considerable pain. The straight leg raising test was very painful to him. X rays disclosed a mild narrowing of the fourth lumbar disc interspace and a severe narrowing of the fifth lumbar disc interspace. One Dr. Hershberger, an orthopedic specialist who examined Lovely at Dr. Stallman's request, informed the latter of the presence of muscle spasms. One vertebra had collapsed upon another one, and the disc space was absolutely gone. Dr. Stallman's diagnosis was low back pain with right sciatica probably due to a ruptured disc. He prescribed pain pills, a muscle relaxant, physiotherapy and a lumbar-sacrial support. He did not recommend surgery because the results of back surgery are frequently poor, but he left that decision to Lovely. Although Lovely's condition was at a quiescent stage, he was totally disabled and unable to work. Dr. Stallman stated that Lovely's complaints were consistent with a back injury and consistent with the heavy lifting and tugging that he did at his work. He felt that the condition "had to do with the heavy lifting."

On cross-examination Dr. Stallman acknowledged his awareness of Lovely's history of back trouble. He also said that Lovely told him of no specific event coinciding with the onset of the pain and that his condition could be described as a degenerative disc disease. He had hypertrophic, or growing boney arthritis in 1973–74, and it could be a condition that any 54-year-old man would be likely to have. He conceded that the arthritis was not caused by lifting and could, in itself, cause the pain. Dr. Stallman stated that it was equally likely that either the heavy lifting or the osteoarthritis and degenerative disc disease contributed to Lovely's condition. "It would be hard to say how much caused what, and so on." Other factors, he said, such as

sleeping positions, can cause back pain. The severe arthritis was very similar to the condition he had in 1973–74, and there had been a progression of it since that time. However, repeated injuries can make osteoarthritis worse. He concluded by admitting that there was no way of knowing within the limits of reasonable medical certainty whether the heavy lifting occurred within two years of September 1979, or before then.

## FINDINGS OF THE BOARD

In denying the claim the Board made the following findings that are relevant to this discussion:

" * * *

13. That the Plaintiff suffered from degenerative disc disease, and osteoarthritis in his back and that these conditions could have caused the Plaintiff pain.

14. That the Plaintiff's osteoarthritis and disc disease are degenerative and progressing with age.

 *       *       *       *       *       *

16. That after initially seeing a doctor on October 1, 1979, the Plaintiff applied for accident and safety benefits through the employer's group plan, and stated that his condition was not due to an injury or sickness arising out of employment.

 *       *       *       *       *       *

29. That the Plaintiff has not established that there has been an untoward or unexpected incident or an untoward or unexpected result occurring during the course of his employment which caused his present condition."

## ISSUE

Lovely states the sole issue presented by this appeal as follows:

"Does the evidence in the record lead inescapably to the conclusion that Lovely is totally and permanently disabled by a back injury due to an accident arising out of and occurring in the course of his employment at Cooper."

## DISCUSSION AND DECISION

If the award of the Full Industrial Board is supported by competent evidence, it will not be reversed upon appeal. It is the duty of the Board to weigh the evidence and draw reasonable inferences from the facts. In order to reach a contrary conclusion we may not disregard any reasonable inferences drawn by the Board from the facts that the evidence tends to prove. When reviewing the record we are required to disregard all evidence which is unfavorable to the findings of the Board and consider only those facts and those reasonable inferences which support such findings. *Lincoln et al. v. Whirlpool Corporation*, (1972) 151 Ind. App. 190, 279 N.E.2d 596; *Soetje and Arnold, Inc. v. Basney*, (1941) 218 Ind. 538, 34 N.E.2d 26. The plaintiff in Workmen's Compensation cases bears the burden of proof. *Milholland Sales and Engineering Company v. Griffiths*, (1931) 94 Ind.App. 62, 178 N.E. 458; *Lincoln, supra.* Only if there is a showing that the award was not supported by evidence of probative value will we be compelled to hold as a matter of law that the findings of the Full Industrial Board do not rest upon a foundation of fact. *Rankin v. Industrial Contractors, Inc.*, (1969) 144 Ind.App. 394, 246 N.E.2d 410. If the Board, in determining the ultimate facts, reaches a legitimate conclusion from the evidentiary facts, this court cannot disturb that conclusion even though we might prefer another conclusion equally legitimate. *Wolf v. Plibrico Sales and Service & Liberty Mutual Insurance Company*, (1973) 158 Ind.App. 111, 301 N.E.2d 756, 304 N.E.2d 355 *trans. denied.*

Lovely cites five cases in support of his contention: *Calhoun v. Hillenbrand Industries, Inc.*, (1978) 269 Ind. 507, 381 N.E.2d 1242; *Ellis v. Hubbell Metals, Inc.*, (1977) Ind.App., 366 N.E.2d 207; *Wolf, supra; Rankin, supra; American Maize Products Co. v. Nichiporchik*, (1940) 108 Ind.App. 502, 29 N.E.2d 801.

Under the statute, " 'Injury' and 'personal injury' mean only injury by accident arising out of and in the course of the employment and do not include a disease in

any form except as it results from the injury." Ind.Code 22–3–6–1(e) (Supp.1981). The term "accident" is defined as an unlooked for mishap, or untoward event which is not expected or designed. *American Maize Products Co., supra.* An injury may be the result of accidental means though the act involving the accident was intentional. *American Maize Products Co.* Where a condition was brought about by a succession of relatively slight blows which accumulated and resulted in a serious and disabling injury, it is compensable as though the blow or incident occurred at one time. *American Maize Products Co.*

In both *Rankin, supra,* and *Wolf, supra,* the claimants were engaged in performing their normal work duties when they began to experience pain. Each claimant went to his family doctor, and both claimants continued to work after the onset of the pain, but were forced to stop because the pain was too severe. In each case the Board denied compensation, and in each case this court reversed the decision of the Board. In *Rankin* the pain commenced while claimant was operating a fork lift over ruts which caused jolting. A herniated disc was discovered. The medical testing indicated that there were progressive degenerative changes in the joint, and the eventual collapse of the joint, due to the jolting, was "a new part of the same condition." *Rankin,* 144 Ind.App. at 399, 246 N.E.2d 410. In *Wolf* the claimant worked in a kneeling or bending position while repairing boilers. He experienced pain normally, but on one particular day he felt sharp pain, and his condition was diagnosed as lumbo-sacral sprain caused by the work. No untoward event was involved in either case. The court, in *Wolf,* after stating that internal exertion or strain can lay the basis for accidental injury as well as external trauma, stated:

> "A careful examination of the entire record here leads inescapably to the conclusion that the Appellant's injury directly resulted from an 'incident' or 'accident' in the course of and arising out of the scope of his employment. There is no evidence whatsoever to sustain a conclusion that such injury had its origins elsewhere."

158 Ind.App. at 127, 301 N.E.2d 756, 304 N.E.2d 355.

In *Ellis, supra,* the claimant had a history of sciatic pains. While performing his job in the usual way, he attempted to lift a roll of sheet metal and experienced a sharp pain in his lower back. The court, permitting recovery, held that an accident that aggravates or accelerates a preexisting injury is compensable even though it occurs during the performance of regular duties. *Ellis* adopted the "unexpected result" test to describe the term "accident." Under that theory, an accident may occur where everything preceding the accident was normal, and only the injury itself was unexpected.

However, the Indiana Supreme Court reached a different result in *Calhoun v. Hillenbrand Industries, Inc.,* (1978) 269 Ind. 507, 381 N.E.2d 1242, which vacated an opinion of the Court of Appeals reported at 374 N.E.2d 54. In *Calhoun* the plaintiff was engaged in the normal labor of lifting boxes of parts out of a bin and attaching those parts to table tops. Without any unusual or untoward event that the plaintiff could remember as bringing on the pain, she began to feel pain in her lower back. She left work and went to see her doctor. There was evidence that she told her supervisor that her kidney bothered her. She told other employees that arthritis was bothering her back, and she had pain from it. Her family doctor told her she had an arthritic condition; she told her doctor she was not certain she had hurt her back at work, but that was where she first felt the pain. She returned to work, but because of intense pain had to quit. Her family doctor sent her to an orthopedic specialist who, after tests, discovered an abnormal enlargement of a disc and abnormal knee and ankle reflexes. The specialist stated that any kind of bending or lifting where pressure was exerted on the back could cause the kind of injury that the plaintiff suffered, and the plaintiff's history was compatible with the injury.

The Industrial Board held that no specific time or incident could be cited as the cause of the pain, and found that the plaintiff had not sustained her burden of proof of an accident or untoward event arising out of, or in the course of her employment. The Court of Appeals, relying upon *Ellis, Rankin, Wolf,* and *American Maize Products Co.,* reversed the Industrial Board in an opinion later vacated by the Indiana Supreme Court. The Court of Appeals stated in *Calhoun*:

"No reasonable man could find that Calhoun, while at work, did not experience back pain on April 2, 1976 in that she testified that her back pain had commenced that day, she told her supervisor that she had back pain, she left work early that day and consulted a doctor, and she later showed objective symptoms of back injury. The Industrial Board has the right to disbelieve a claimant's testimony, but where other credible evidence exists which supports the claimant's testimony and no credible evidence is presented which would conflict with the claimant's testimony, then the Industrial Board cannot capriciously disregard the claimant's testimony. It is clear then that on April 2, 1976 either Calhoun injured her back while performing her normal work duties or a back injury of gradual development manifested itself on that day.

If, indeed, Calhoun injured her back on April 2, 1976 while performing her normal work duties she would be entitled to compensation for such injury under the unexpected result theory espoused in *Ellis v. Hubbell Metals, Inc., supra.* See also *Studebaker Corp. v. Jones* (1937), 104 Ind. App. 270, 10 N.E.2d 747. If, however, her injury was of gradual development and the pain which she experienced on April 2, 1976 was merely a manifestation of a gradually developing injury, she would be entitled to recover under the rules set forth in *Rankin v. Industrial Contractors, Inc.* (1969), 144 Ind.App. 394, 246 N.E.2d 410, and *Wolf v. Plibrico Sales & Service Company* (1973), 158 Ind.App. 111, 301 N.E.2d 756." (Footnote omitted.)

374 N.E.2d at 56. The court further said, "The uncontradicted facts in this case are squarely within the principles announced by this court," citing *American Maize Products Co.* for the proposition that the employee needn't attribute his injury to any particular date, time, or event. 374 N.E.2d at 58.

The Supreme Court, however, granted transfer of *Calhoun* and reinstated the decision of the Industrial Board:

"In *Soetje and Arnold, Inc. v. Basney,* (1941) 218 Ind. 538, 539–40, 34 N.E.2d 26, 27, this court held:

'[I]t is the province of the Industrial Board to hear and weigh the evidence, thus determine the evidentiary facts, and from such facts, draw reasonable inferences to arrive at the ultimate fact. The finding of the ultimate fact becomes a question of law, for the determination of the court, only in case where there is no conflict in the evidence and where there can be only one reasonable inference drawn from the evidentiary facts established by the uncontradicted evidence.'

The *Soetje* case well expresses the long established and recognized rule that the trier of the facts makes the determination of what the facts are when reasonable men could differ on them, and that such trier of facts, including the Industrial Board in this case, has the right to disbelieve a claimant's testimony in the face of other testimony which it does weigh and believe. *See also Wilson v. Chevrolet Commercial Body,* (1977) Ind. App., 367 N.E.2d 11, *trans. denied.*

There is no evidence whatsoever in the record that wear and tear because of intermittent bending processes in Calhoun's work caused or could have caused the condition she had in her back. In *American Maize Products Co. v. Nichiporchik,* (1940) 108 Ind.App. 502, 29 N.E.2d 801, relied on by the Court of Appeals, there was evidence that the particular apparatus used by the claimant produced certain violent trauma to his hands that had the result over thirteen years of causing a disabling condition to exist.

The *American Maize* court found that under those circumstances, the claimant was not bound to show the resultant injury and damage was due to one particular blow which produced the particular injury. *See also Wolf v. Plibrico Sales & Service Co.*, (1973) 158 Ind.App. 111, 301 N.E.2d 756, *reh. denied*, (1973) 158 Ind. App. 111, 304 N.E.2d 355, *trans. denied. Rankin v. Industrial Contracts [sic] Inc.*, (1969) 144 Ind.App. 394, 246 N.E.2d 410, *trans. denied.* If, indeed, the evidence in this case does give rise to an inference that there was a normal wear and tear on Calhoun's back that caused her resultant injury, that inference was to be drawn by the Industrial Board and not by the Court of Appeals or this court. There was ample conflict in the evidence for the Industrial Board to draw inferences in either direction, and it is not our province to second guess them. *Lincoln v. Whirlpool Corporation*, (1972) 151 Ind.App. 190, 279 N.E.2d 596; *C. & E. Trucking Corporation v. Stahl*, (1962) 135 Ind.App. 600, 181 N.E.2d 21, *trans. denied. Pittsburgh Testing Laboratories v. Kiel*, (1960) 130 Ind.App. 598, 167 N.E.2d 604; *Lasear, Inc. v. Anderson et al*, (1934) 99 Ind.App. 428, 192 N.E. 762.

It is well settled under our law that in order to show an accident there must be some untoward or unexpected event. It has been further described as an unlooked for mishap or untoward event not expected or designed. It is not sufficient to merely show that a claimant worked for the employer during the period of his life in which his disability arose. *George v. Interstate Metal Products*, (1955) 125 Ind. App. 406, 126 N.E.2d 258, *Haskell & Barker Car Co. v. Brown*, (1917) 67 Ind. App. 178, 117 N.E. 555; Small, Workmen's Compensation Law of Indiana § 5.1, p. 33 (Segar.Supp.1968)."

269 Ind. at 509–511, 381 N.E.2d 1242. We read *Calhoun* to mean that the Supreme Court requires: (1) an untoward or unexpected event, which can be a series of inextricably connected blows as existed in *American Maize Products Co.*, and (2) proof of something more than the mere fact that the disability arose during the term of the claimant's employment. Furthermore, any inference that normal wear and tear on the plaintiff's back caused the injury is to be drawn by the Industrial Board and not the Court of Appeals.

■ We are of the opinion that the facts of this case are similar to those in *Calhoun*. The Board's findings of facts and conclusions of law were based on legitimate inferences from the evidence. There was evidence that no unlooked for mishap or untoward event occurred, and, from the equivocal nature of Dr. Stallman's testimony, the Board could infer that Lovely's condition was the result of the progression of natural causes.

For the above reasons, this cause is affirmed.

Affirmed.

ROBERTSON, J., concurs.

RATLIFF, J., concurs in result with opinion.

RATLIFF, Judge, concurring in result.

I concur in the result reached by the majority in this case in view of the peculiar facts of the case and because of the pronouncement of our supreme court in *Calhoun v. Hillenbrand Industries, Inc.*, (1978) 269 Ind. 507, 381 N.E.2d 1242 (DeBruler and Hunter, JJ., dissenting.) However, I believe that in adopting a definition of "accident" which requires a sudden, unexpected, or untoward event definitely traceable to a precise date, place, and time, we have departed from the underlying philosophy and legislative intent of the Indiana Workmen's Compensation Act.

Workmen's compensation acts are social legislation designed to provide compensation to workers suffering from work-related injuries without meeting the liability requirements of tort law. The test is not one of fault flowing from a specific event; rather, it is one flowing from the relationship to the employment. 1 A. Larson, Workmen's Compensation Law, § 2.10 (1978).

"The ultimate social philosophy behind compensation liability is the belief in the wisdom of providing, in the most efficient, most dignified, and most certain form, financial and medical benefits for the victims of work-connected injuries which an enlightened community would feel obliged to provide in any case in some less satisfactory form, and of allocating the burden of these payments to the most appropriate source of payment, the consumer of the product."

*Id.* at § 2.20.

Most workers' compensation acts, either by their express terms or by judicial construction, require that the injury be accidental in character. 1B A. Larson, Workmen's Compensation Law, § 37.10 (1980). It is the definition of "accident" or "accidental injury" which has been the source of considerable difficulty to the courts. In general, two lines of authority have developed, one requiring an unexpected, untoward *event* and the other holding an unexpected *result* sufficient to meet the requirement of "accident" or "accidental injury." In other words, do the requirements of unexpectedness and definite time relate to an event, the cause, or are they satisfied by the result? *See generally*, the discussion in 1B A. Larson, Workmen's Compensation Law, § 37.20 (1980).

The requirement of an unexpected, untoward event, *i.e.*, an unexpected cause, as found in *Calhoun v. Hillenbrand, supra,* seems to spring from the decision of our supreme court in *U. S. Steel Corp. v. Dykes*, (1958) 238 Ind. 599, 154 N.E.2d 111, a case which has been severely criticized. *See* Note, *The Meaning of the Term "Accident" in the Indiana Workmen's Compensation Act*, 13 Val.U.L.Rev. 535 (1979). It has been said that the requirement of unusual exertion or of an unexpected event makes it possible for a claimant who suffers an injury caused by his work to be denied compensation and that, therefore, the accident requirement should require only that an injury be unexpected. 13 Val.U.L.Rev. 558–559. Justice DeBruler in his dissenting opinion in *Calhoun*, in which Justice Hunter concurred, stated that the Industrial Board denied compensation because the evidence failed to show an injury by accident, and stated further:

"The evidence was deemed by the Board to be deficient for this purpose because it did not disclose a 'specific time or incident that can be pointed to that would cause the pain in plaintiff's back.' The Board discloses here that it held an erroneous view of the legal requirements imposed upon a claimant to prove an injury by accident. There is nothing in the language of the statute or in reason upon which such a requirement can stand.

"Moreover, such requirement cannot stand upon the case law, as is demonstrated by the principle announced in the case of *American Maize Products, Co. v. Nichiporchik*, (1940) 108 Ind.App. 502, 29 N.E.2d 801, correctly quoted and relied upon by Judge Lowdermilk in reversing the Board's decision for the Court of Appeals. There the court said:

"'While it is true that the appellee can point to no particular date nor to a particular blow which produced the resultant injury, yet it is not necessary that the accident occur at any particular or specific time. The series of blows to appellee's hands produced the injury and loss which was an unintended and unexpected occurrence.' 108 Ind.App. at 511, 29 N.E.2d at 805."

269 Ind. at 512, 381 N.E.2d at 1245.

In addition to the case referred to by Justice DeBruler, other cases decided by this court and referred to in the majority opinion would appear to support the unexpected result theory of accidental injury. Indeed, some of the language of our supreme court in *Calhoun* lends credence to the idea that the unexpected result concept of accidental injury has not been abandoned totally:

"There is no evidence whatsoever in the record that wear and tear because of intermittent bending processes in Calhoun's work caused or could have caused the condition she had in her back. In *American Maize Products Co. v. Nichipor-*

*chik,* (1940) 108 Ind.App. 502, 29 N.E.2d 801, relied on by the Court of Appeals, there was evidence that the particular apparatus used by the claimant produced certain violent trauma to his hands that had the result over thirteen years of causing a disabling condition to exist. The *American Maize* court found that under those circumstances, the claimant was not bound to show the resultant injury and damage was due to one particular blow which produced the particular injury." (Citations omitted).

269 Ind. 510, 381 N.E.2d 1244. The court then stated that the evidence was in conflict on that issue, that it was the function of the Industrial Board to determine the issue, and that the Board should not be second-guessed on appeal.

In other words, a disability resulting from ordinary wear and tear may not be compensable. However, if the normal operations of the work increase the likelihood of the disability occurring; if it is established by competent medical proof that such operations did in fact enhance the probability of the disability occurring over and above the normal incidence thereof; and if the disability in fact occurs as a result, there is compensable accidental injury under the unexpected result theory or under the exposure theory of accident.

In this case, I concur in the result reached by the majority because I find the evidence supports a finding that Lovely's disability was not work-related and because I recognize the applicability of *stare decisis* and the obligation of this court to follow the decisions of our supreme court. Nevertheless, to the extent we have departed from the unexpected result theory of accident and insist upon the happening of an unexpected event as a prerequisite to finding accidental injury, I believe we have departed from the original intent and purpose of the Workmen's Compensation Act. We should reexamine our position regarding the definition of "accident" in the light of the obvious intent of the act.