**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DOUGLAS A. MULVANEY**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**TRICIA G. BELLICH**
**MATTHEW D. SNYDER**
Kopka, Pinkus, Dolin & Eads, PC
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NICHOLE TEMPLE, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1302-EX-164 |
| | ) | |
| AM GENERAL, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM DECISION OF FULL WORKER'S COMPENSATION BOARD
Application No. C-192549

**August 14, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Nichole Temple worked on various assembly lines for AM General at its facility in Mishawaka where AM General constructed Hummer H2 (Hummer) vehicles.  At some point, Temple applied for worker's compensation and medical benefits, claiming that she suffered a herniated disc in her neck while performing repeated lifting tasks.

The Full Worker's Compensation Board (Board) upheld the hearing officer's denial of Temple's request for benefits because she failed to satisfy her burden of proof with regard to the causation of her condition.  After reviewing the record, we agree with the Board's denial of Temple's request for benefits and conclude that Temple failed to satisfy her burden of proof because of the absence of evidence on the issue of causation.  Thus, we affirm the judgment of the Board.

FACTS

Temple's job involved performing various tasks on different assembly lines at the AM General plant in Mishawaka that built Hummers.  More particularly, Temple was assigned to work on the fluid, tire build, door, and final lines during the course of her employment.

Within each assembly line there were as many as four to seven stations.  Temple would typically work at a particular station for approximately two-and-one-half hours during her shift and would then switch stations after a break.  At some point in 2004, Temple began to experience numbness, pain, tingling, and swelling in one of her arms.

When Temple was installing third row seats in the vehicles, Temple would have to wrap her arms around the seat in a "bear hug," lift the seat up over her head, and put it

over the back bumper into the back of the truck. Appellant's App. p. 6-7. Each seat weighed approximately forty-two pounds and was wider than her shoulders. Temple installed one seat into a Hummer approximately every five minutes.

When Temple began experiencing headaches, she sought medical treatment. An MRI of Temple's cervical spine in March 2006 revealed a large central and left paracentral disc protrusion. During an office visit on March 30, 2006, Dr. Steven Smith told Temple that her C4-5 disc herniation was the result of a degenerative disease and there was a "wear-and-tear" type phenomenon in her neck. It was also determined that those types of herniations occur even in the setting of sedentary jobs that are seemingly less physically demanding. Temple underwent a surgical discectomy in June 2006.

When Temple returned to AM General after her initial neck injury, she began to work on the door line. In this position, when a door would arrive at Temple's station so a latch could be placed on it, she would have to stand on her toes and reach over her head. Temple's head would be titled back at times, and she would have to look up to see what she was doing. Temple would also fasten door panels and perform other duties that required repeated bending of her neck and the use of her arms and legs.

Temple's headaches began to appear again at some point in 2007 while she was working on the door line. After experiencing these episodes, Temple sought treatment from Dr. Todd Graham who administered several injections to Temple. In January 2008, Temple underwent an MRI that revealed a herniation that was pressing against her spinal cord. Additional tests revealed severe spinal stenosis with cord compression and

3

probable compressive myelomalacia of the cervical cord. This injury was one level above Temple's previous surgical site. Appellant's App. p. 41. Temple was informed that the problem was serious and that she needed to consult with Dr. Smith as soon as possible.

Dr. Smith examined Temple in January 2008. He indicated that there was a new disc herniation, and he noted that Temple had been getting better after the surgery. Additional testing showed that Temple's spinal cord was relatively stiff, and a large disc herniation was revealed. As a result, Temple underwent a second surgery on February 15, 2008. A cervical plate was installed, and Dr. Smith gave Temple an "off work" restriction that became effective on January 28, 2008. Appellant's App. p. 43.

In a letter dated July 20, 2010, Dr. Smith rendered his opinion regarding Temple's second neck surgery. Dr. Smith noted that when he examined Temple's MRI results in 2008, he determined that the MRI in 2006 showed that her discs appeared healthy, in light of her young age. However, Dr. Smith believed that the extent of Norton's range of motion activity would be a contributing factor to her ailments that could accelerate a degenerative disc process. Dr. Smith also noted that with the amount of motion in which Norton was constantly engaged at work, there would be a large amount of "wear and tear" on her cervical spine, which would be a contributing factor to the further progression of the disease. Appellant's App. p. 48.

Temple subsequently underwent an examination by Dr. Nitin Khanna for AM General. This examination lasted about twenty minutes and primarily concerned

4

questions about the first surgery. However, Dr. Khanna addressed both the 2006 and 2008 surgeries during the exam. Dr. Khanna noted that there was no specific event that would have caused Temple to develop a disc problem while at work, and it would "be very difficult to state that the patient's second surgery was causally related to a work-related injury." Id. at 11. Dr. Khanna believed that Temple's lengthy history of neck and arm pain without any specific incident would unlikely result from a work-related injury that would have required either the neck surgery that was performed in June 2006, or the surgery that was performed in January 2008.

Dr. Khanna did not have any particular recollection of the records he reviewed and did not remember the specific dates that Dr. Smith covered in his records. Dr. Khanna did not specifically recall reviewing the MRI reports in this case, nor did he recall reviewing Dr. Graham's records.

Dr. Khanna believed that despite the strenuous activity that Temple performed at her job, he could not state with any certainty that Temple's work was necessarily causally related to the disc herniation, as there was no specific event that precipitated it. Dr. Khanna was not able to point to any specific event based on the literature, his interview with Temple, or his review of Dr. Smith's notes.

Dr. Khanna was also unable to rule out other potential causes of the disc herniation other than her employment. Appellant's App. p. 59. Dr. Khanna disagreed with Dr. Smith's opinion about causation because unless there was a significant incident,

5

he was not able to link a disc herniation to work duties. Dr. Khanna specifically stated that "I have no opinion as to what may have caused it." Appellant's App. p 62.

Following Temple's two surgeries, Temple began treatment with Ralph Carbone, a pain management specialist, for the continuing pain in her neck and shoulders. Temple then filed for worker's compensation and medical benefits, claiming that her injuries were the result of the course and scope of her employment while working on the assembly line at AM General. More specifically, Temple claimed that she suffered a herniated disc to her neck while performing repetitive lifting tasks on the assembly lines.

Following a hearing, findings of fact and conclusions of law were entered on March 27, 2012, in favor of AM General. Temple appealed that decision to the Board, which upheld the decision of the single member hearing judge. In more than sixty findings of fact and conclusions of law, the Board relied on Dr. Khanna's opinion and concluded that Temple did not meet her burden of proof that her injuries were work-related. In relevant part, the Board's findings stated that:

> 4. The claimant ultimately had surgery at [the] C4-5 level for disc herniation and was off work for over a year and a half.
>
> 5. This matter was not deemed compensable since Dr. Smith opined that he did not feel there was any causal connection between her employment and the disc herniation.
>
> 6. [O]n March 30, 2006, Dr. Smith opined that while the herniation was a "wear and tear phenomenon" in the neck he also stated that it is certainly possible that these types of disc herniations occur in the setting of a desk type job that are seemingly less physical.
>
> . . .

6

14.   Dr. Smith, after seeing [a] second disc herniation in the same area changed his prior position.

15.   Dr. Smith stated that he believed the new disc herniation which occurred shortly after the first surgery [led] him to believe that her job required a large amount of cervical motion in that it was a very suspicious contributor to the development of the disease.

. . .

17.   On September 2, 2009, Dr. Khanna stated that he concurred with Dr. Smith that the claimant had a long standing history of neck and arm pain without any specific incident and it would unlikely be the result of a work-related injury in regard to the surgery of June 2006 meaning it would be more of a wear and tear phenomenon.

18.   Concerning the need for surgery in 2008, Dr. Khanna stated that without a specific event or incident, it is difficult to say the adjacent segment was related to the work place.

. . .

27.   [Dr. Smith] could not state that Ms. Temple's work at AM General exacerbated her pre-existing condition.

28.   No injury had been reported to AM General during the entire course of her treatment in 2005 through 2007.

. . .

34.   Dr. Smith raised the issue of genetics and smoking as contributing factors.

. . .

39.   No incident is described to precipitate the [subsequent] headaches and by her own admission, the headaches would often occur at home.  No neck pain is mentioned with the onset of her headaches.

. . .

41. Ms. Temple has very simply failed to meet her burden of proof.  Even her best evidence presented, the findings of Dr. Smith, conclude that the cause was multifactorial.  He admitted individuals with sedentary jobs suffer these types of neck injuries.  Ms. Temple was also a smoker

7

throughout her treatment. Plus, it was only upon the need for a second surgery that he reached this possible conclusion.

. . .

43. There is a lack of conclusive evidence to tie the need for the second injury to a work place injury. The evidence is void of a report drawing a conclusion on causation. The only reliable opinion is that of Dr. Khanna who reviewed the circumstances in totality [and] concluded that it would be very difficult to state that the patient's second surgery was causally related to a work-related injury.

Temple now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing a worker's compensation decision, we are bound by the Board's factual determinations and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. Wright Tree Serv. v. Hernandez, 907 N.E.2d 183, 186 (Ind. Ct. App. 2009). Also, in reviewing the Board's decision, we may only consider errors in the Board's conclusions of law. Four Star Fabricators, Inc. v. Barrett, 638 N.E.2d 792, 794 (Ind. Ct. App. 1994).

If the Board's award is supported by competent evidence, it will not be reversed on appeal. Lovely v. Cooper Indus. Products, Inc., 429 N.E.2d 274, 276 (Ind. Ct. App. 1981). To reach a contrary conclusion, we may not disregard any reasonable inferences drawn by the Board from the facts that the evidence tends to prove. Id. If the Board, in determining the ultimate facts, reaches a legitimate conclusion from the evidentiary facts, we cannot disturb that conclusion even though we might find another conclusion equally

8

legitimate. Id. Finally, we note that as to the Board's interpretation of the law, we employ a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of the agency's expertise in the given area. Wright, 907 N.E.2d at 186.

## II. Norton's Claims

As noted above, Temple contends that she was improperly denied worker's compensation and medical benefits because she established that her herniated disc was causally related to her work duties at AM General. Thus, Temple maintains that the Board's denial of these benefits must be reversed.

In resolving this issue, we note that the Worker's Compensation Act (Act) authorizes the payment of compensation to employees for "personal injury or death by accident arising out of and in the course of the employment." Ind. Code § 22-3-2-2(a). Put another way, for an injury to be compensable under the Act, the injury must arise "out of" the employment and arise "in the course of the employment." Four Star Fabricators, 638 N.E.2d at 794. The Board is given the ultimate authority to determine the issue of whether an employee's injury arose out of and in the course of his employment. Outlaw v. Erbrich Prod. Co., Inc., 777 N.E.2d 14, 25 (Ind. Ct. App. 2002).

As discussed above, the Board determined that Temple was not eligible for unemployment benefits because there was no report that drew a conclusion with regard to causation. Appellant's App. p. 9-12. More particularly, the Board pointed to Dr. Khanna's deposition and the report that Temple completed on September 2, 2009. Dr.

9

Khanna was of the opinion that "it would be very difficult to state that a patient's second surgery was [causally] related to a work-related injury without any specific event that would have caused the patient to have a problem while at work." Id. at 50. Dr. Khanna was also in agreement with Dr. Smith's assessment that Temple's June 2006 surgery was more likely to have resulted from a "wear and tear" phenomenon. Id.

In other words, the Board considered Dr. Khanna's medical opinion and believed it to be factually credible. Although Temple maintains that the Board incorrectly applied the proper legal standard in reaching its conclusion, the evidence established that Dr. Khanna is a medical expert who was retained to provide a factual medical opinion, and the weight of that opinion is to be determined by the Board. Lovely, 429 N.E.2d at 276. Although Dr. Khanna could not definitively determine causation because there was no specific event, his notes, interpretations, and findings from his examination are still factual medical opinions to be weighed by the Board. See id. Moreover, Temple's own expert, Dr. Smith, stated in his July 20, 2010 opinion letter that he "does not believe there is any specific work injury or specific incident that was reported to potentially cause the changes in [Temple's] symptoms." Appellant's App. p. 48.

The Board determined that Temple's "best evidence" amounted to the findings of Dr. Smith that the cause of Temple's condition was "multifactorial," which included smoking, a genetic factor, and "mechanical wear" on the cervical spine. Id. But Dr. Smith qualified his previous opinion by stating that "these movements and [Temple's] job . . . were not the only factors that contributed to that disease." Id. at 48. In fact, Dr.

10

Smith determined that Temple's first herniation was not the result of injuries that she sustained on her job. Appellee's App. p. 10. Dr. Smith recognized that these types of disc herniations may occur in the setting of sedentary jobs that are not as physically demanding as Temple's. Id.

In sum, the evidence that Temple presented in this case included multifactorial explanations for her injury and contradictory opinions regarding causation for the cervical herniations. As a result, Temple failed to satisfy her burden of proof in light of the absence of evidence on causation. Thus, we conclude that the Board properly upheld the hearing officer's decision to deny Temple's claim for worker's compensation and medical benefits.

The judgment of the Board is affirmed.

MAY, J., and MATHIAS, J., concur.